# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
:
RELATED COMPANIES, L.P. and : 
MBM SUPPLY COMPANY LLC, :
:
                    Plaintiffs, :
:
       - against - :   Civil Action No. 1:17-CV-4175
:
CARLETON RUTHLING, TESLA WALLS LLC, :
HUDSON WALLS LLC, RELATED SUPPLY :
LTD., JEANEAH PAIK, CHRISTOPHER DU, :
SKYE HOLDINGS LTD., and SKYE SUPPLY LLC, :
:
              Defendants. :
:
-----------------------------------------------------------------x

## DEFENDANTS CARLETON RUTHLING, TESLA WALLS LLC,
## HUDSON WALLS LLC, AND SKYE HOLDINGS LTD.'S
## MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

Ronald W. Zdrojeski
Lawrence A. Dany III
EVERSHEDS SUTHERLAND (US) LLP
1114 Avenue of the Americas, 40th Floor
New York, New York 10036
(212) 389-5000
*Attorneys for Defendants Carleton
Ruthling, Tesla Walls LLC, Hudson
Walls LLC, and Skye Holdings Ltd.*

39351923.4

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS...........................................................................................5

LEGAL STANDARD ..................................................................................................7

ARGUMENT ................................................................................................................8

I.      Plaintiffs Lack Standing to Assert Claims Under the Federal RICO Statute.............9

II.     Plaintiffs' RICO Claims Fail Under Rule 9(b)'s Heightened Pleading
Standard....................................................................................................................11

A.      The Amended Complaint Fails to Allege Predicate Acts of Fraud with Particularity
.................................................................................................................. 12

B.      The Amended Complaint Fails to Allege a Pattern of Racketeering. ........................ 13

C.      The Amended Complaint Fails to Allege Reasonable Reliance.................................. 15

D.      The Amended Complaint Fails to State a Claim for RICO Conspiracy. .................. 17

III.    The Court Should Decline to Exercise Supplemental Jurisdiction Over Plaintiffs'
State Law Claims. ................................................................................................... 18

IV.     Alternatively, the Court Should Dismiss Plaintiffs' State Law Fraud and
Unjust Enrichment Causes of Action for Failure to State a Claim. ........................................19

A.      The Amended Complaint Fails to State a Claim for Common-Law Fraud. ............. 19

B.      The Amended Complaint Fails to State a Claim for Unjust Enrichment. ................ 20

CONCLUSION ...........................................................................................................21

39351923.4

<u>**TABLE OF AUTHORITIES**</u>

<u>Page</u>

**CASES**

*42 Moss v. Morgan Stanley, Inc.*,
  719 F.2d 5 (2d Cir.1983)...........................................................................................12

*Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*,
  637 F. Supp. 2d 185 (S.D.N.Y. 2009).....................................................................22

*Am. Fed'n of State, Cty. & Mun. Emps. Dist. Council 37 Health & Sec. Plan v. Bristol-
  Myers Squibb Co.*,
  948 F. Supp. 2d 338 (S.D.N.Y. 2013).................................................................12, 13

*Ashcroft v. Iqbal*,
  556 U.S 662 (2009)....................................................................................................8

*Bank of China, N.Y. Branch v. NBM LLC*,
  359 F.3d 171 (2d Cir. 2004)...................................................................................4, 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................8

*Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of N.J., Inc.*,
  448 F.3d 573 (2d Cir. 2006)......................................................................................22

*Birch v. Pioneer Credit Recovery, Inc.*,
  No. 06–CV–6497T, 2007 WL 1703914 (W.D.N.Y. June 8, 2007).........................20

*Celpaco, Inc. v. MD Papierfabriken*,
  686 F. Supp. 983 (D. Conn. 1988)..............................................................................9

*City of New York v. Cyco.Net, Inc.*,
  383 F. Supp. 2d 526 (S.D.N.Y. 2005).......................................................................17

*Clifford v. Hughson*,
  992 F. Supp. 661 (S.D.N.Y. 1998) .............................................................................9

*Crigger v. Fahnestock and Co., Inc.*,
  443 F.3d 230 (2d Cir. 2006).......................................................................................17

*D.R.S. Trading Co., Inc. v. Fisher*,
  No. 01 CIV. 8028 (WHP), 2002 WL 1482764 (S.D.N.Y. July 10, 2002)..................4, 14, 15

**TABLE OF AUTHORITIES**

Page

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006)..................................................................10

*Discon, Inc. v. NYNEX Corp.*,
  93 F.3d 1055 (2d Cir. 1996)..................................................................19

*DLJ Mortg. Capital, Inc. v. Kontogiannis*,
  726 F. Supp. 2d 225 (E.D.N.Y. 2010) ...................................3, 10, 11, 12

*Elsevier, Inc. v. W.H.P.R., Inc.*,
  692 F. Supp. 2d 297 (S.D.N.Y. 2010).....................................................19

*Figueroa Ruiz v. Alegria*,
  896 F.2d 645 (1st Cir. 1990).....................................................................9

*First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*,
  219 F. Supp. 2d 576 (S.D.N.Y. 2002)........................................................3

*First Nationwide Bank v. Gelt Funding Corp.*,
  27 F.3d 763 (2d Cir. 1994)...............................................................3, 10

*Gerstenfeld v. Nitsberg*,
  190 F.R.D. 127 (S.D.N.Y. 1999) ............................................................14

*Gross v. Waywell*,
  628 F. Supp. 2d 475 (S.D.N.Y. 2009).........................................9, 12, 14

*Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*,
  748 F.2d 729 (2d Cir. 1984)...................................................................17

*Harbinger Capital Partners Master Fund I, Ltd. v. Wachovia Capital Markets, LLC*,
  No. 07-CV-8139 DC, 2008 WL 3925175 (S.D.N.Y. Aug. 26, 2008) ..............10, 11

*Hecht v. Commerce Clearing House, Inc.*,
  897 F.2d 21 (2d Cir. 1990).................................................................19, 10

*Herzfeld v. JPMorgan Chase Bank*, N.A.,
  354 F. App'x 488 (2d Cir. 2009). ...........................................................21

*Katzman v. Victoria's Secret Catalogue*,
  167 F.R.D. 649 (S.D.N.Y. 1996) ..........................................................1, 9

*Kilkenny v. Law Office of Cushner & Garvey, L.L.P.*,
  No. 08-CV-588 KMK, 2012 WL 1638326 (S.D.N.Y. May 8, 2012) ......................15

## TABLE OF AUTHORITIES

Page

*Law Debenture v. Maverick Tube Corp.*,
   No. 06-CV-14320, 2008 WL 4615896 (S.D.N.Y. Oct. 15, 2008)...........................................22

*Mackin v. Auberger*,
   59 F. Supp. 3d 528 (W.D.N.Y. 2014) ....................................................................................12

*Marino v. Jonke*,
   No. 7:11-CV-430 VB, 2011 WL 3251585 (S.D.N.Y. June 30, 2011).......................................2

*In re Merrill Lynch Ltd. P'ships Litig.*,
   154 F.3d 56 (2d Cir. 1998)..............................................................................................4, 10

*Motorola Credit Corp. v. Uzan*,
   322 F.3d 130 (2d Cir. 2003).............................................................................................3, 11

*Palatkevich v. Choupak*,
   152 F. Supp. 3d 201 (S.D.N.Y. 2016)....................................................................................23

*Picard v. Kohn*,
   907 F. Supp. 2d 392 (S.D.N.Y. 2012)...............................................................................5, 19

*Pieper v. Benerin, LLC*,
   972 F. Supp. 2d 321 (E.D.N.Y. 2013) ...................................................................................15

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*,
   84 F.3d 629 (2d Cir. 1996)....................................................................................................17

*Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*,
   17 F. Supp. 3d 207 (E.D.N.Y. 2014) .........................................................................5, 11, 20

*Terra Sec. Asa Konkursbo v. Citigroup, Inc.*,
   740 F. Supp. 2d 441 (S.D.N.Y. 2010)...................................................................................16

### STATUTES, RULES, AND REGULATIONS

18 U.S.C. § 1962.................................................................................................... *passim*

18 U.S.C. §§ 1341, 1343.....................................................................................................16

Fed. R. Civ. P. 9(b) ................................................................................................. *passim*

Fed. R. Civ. P. 12(b)(6).................................................................................................12, 20

Defendants Carleton Ruthling, Tesla Walls LLC, Hudson Walls LLC, Related Supply Ltd., and Skye Holdings Ltd. (collectively, "Defendants"), by and through their undersigned attorneys, hereby move the Court to: (1) dismiss Plaintiffs' federal RICO claims; and (2) decline to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismiss those claims without prejudice.  Alternatively, if the Court exercises supplemental jurisdiction over Plaintiffs' state law claims, it should dismiss Plaintiffs' causes of action for common law fraud and unjust enrichment for failure to state a claim.

## PRELIMINARY STATEMENT

Plaintiffs' allegations are based on a re-casting of evidence presented to and rejected by a jury during a recent federal trial in the Southern District of New York.  Unhappy with the result of that litigation, Plaintiffs, the Related Companies, L.P. ("Related") and MBM Supply Company LLC ("MBM"), seek to tarnish Defendants' reputations by recklessly invoking "the litigation equivalent of a thermonuclear device," – civil RICO claims.  *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996).  Plaintiffs, however, lack standing to assert RICO claims and, in any event, the facts as alleged fall far short of satisfying the heightened pleading standard for alleging RICO claims predicated on fraud.

In 2012, Related, an international real estate firm headquartered in New York, partnered with Tesla Wall Systems, LLC ("Tesla"), a young but growing business, to design, manufacture, and install glass window enclosures, known as "curtain wall," for Related's numerous high-rise construction projects.[1]  Although Tesla was a newcomer to the industry, Related recognized the value of Tesla's product and hoped that Tesla would eventually become its exclusive supplier of curtain wall services.  Tesla's potential value, however, ultimately proved too enticing, and

---

[1] Plaintiffs sued Tesla in this action but voluntarily dismissed those claims on July 5, 2017.  Doc. No. 59.

1

Related began secretly working with Tesla's then-President, Michael Budd, subsequently a Related executive, to bring about Tesla's demise and form a competing curtain wall company, New Hudson Facades LLC.  After discovering this scheme, Tesla sued Budd for, *inter alia*, breach of fiduciary duty and obtained a favorable verdict two years later.  *Tesla Wall Systems, LLC v. Budd*, No. 1:14-cv-08564-LLS, Doc. No. 1 (S.D.N.Y. Oct. 27, 2014); Doc. No. 87 (S.D.N.Y. Nov. 29, 2016) (referenced herein as "Action 1").[2]

Shortly after Tesla filed suit against Budd, Related retaliated by filing a separate action in New York state court to recover certain advances it made to Tesla through a wholly owned subsidiary, Plaintiff MBM.  *The Related Companies, L.P. v. Tesla Wall Systems, LLC*, Index No. 650778/2015, Doc. No. 1 (N.Y. Sup. Ct., New York Cty., Mar. 13, 2015) (referenced herein as "Action 2").  The true purpose of the lawuit was to recover from Tesla the amounts Tesla might recover from Budd.  In that action, which the parties have not resolved, Related's claims to recover the advances sound in contract.[3]  These very same advances are at the heart of the present dispute.  On cross-motions for summary judgment in Action 2, the court recently held that the parties' written agreement conditions Related's right to recover the advances on Tesla's future profitability—an event that never came to fruition.  *Id.* at Doc. No. 198 (N.Y. Sup. Ct., New York Cty., Apr. 17, 2017). The court also found that Tesla is no longer a going concern.  *Id.* Even so, the Court entered judgment against Tesla, reasoning that Tesla might become profitable

---

[2] Following post-verdict motions, the court upheld the jury's finding of liability but ordered a new trial on the issue of damages.  *Tesla Wall Systems, LLC*, No. 1:14-cv-08564-LLS, Doc. No. 130 (S.D.N.Y. Apr. 26, 2017).  The court has not scheduled a date for the new trial but has denied Budd's request for leave to file a motion for summary judgment.

[3] The Court may consider the state court's order and related filings in ruling on the present motion to dismiss.  *Marino v. Jonke*, No. 7:11-CV-430 VB, 2011 WL 3251585, at *1 (S.D.N.Y. June 30, 2011) ("The Court may take judicial notice of the motion and the [state] court's order granting it.").  Further "[e]ven if the Court could not take judicial notice of the motion and order, [Plaintiffs] sufficiently reference[] them in [their] complaint, which permits the Court to review [them] at this stage."  *Id.*; Am. Compl. at ¶ 2, n.1.

in the future if it recovers damages in the action against Budd.  Am. Compl. ¶ 2, n.1; *The Related Companies, L.P.*, Index No. 650778/2015, Doc. No. 198 (N.Y. Sup. Ct., New York Cty., Apr. 17, 2017), Doc. No. 220 (N.Y. Sup. Ct., New York Cty., June 21, 2017).  The court has stayed execution of the judgment while the parties appeal its order.  *Id.* at Doc. No. 220 (N.Y. Sup. Ct., New York Cty., June 21, 2017).

Notwithstanding the present uncertainty concerning its ability to recover the advances based on its contractual claims, following Tesla's verdict against Budd, Related filed this suit seeking to recover the same advances at issue in Action 2.  This time, however, Related asserts claims sounding in fraud – namely, two federal RICO claims, along with various other claims arising under state law.  Plaintiffs, however, lack standing to assert federal RICO claims.  In the Second Circuit, it is well settled that "a cause of action does not accrue under RICO until the amount of damages becomes *clear and definite*." *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003) (emphasis added) (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994)).  Thus, for example, "a creditor claiming that its ability to collect its debt has been impaired or frustrated by a RICO violation lacks standing to sue under RICO for the amount of the debt as long as the extent of the loss remains uncertain, [*e.g.*,] where collection efforts continue." *DLJ Mortg. Capital, Inc. v. Kontogiannis*, 726 F. Supp. 2d 225, 237 (E.D.N.Y. 2010) (quoting *First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 219 F. Supp. 2d 576, 578 (S.D.N.Y. 2002).  This is the precise case here and, depending on the outcome of Action 2, Plaintiffs' purported RICO injury "may be eliminated or significantly reduced." *Id.* (quoting *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 59 (2d Cir. 1998)).  Plaintiffs' thus lack standing to assert claims for violations of the federal RICO statute, and the Court should dismiss those causes of action.

But even if Plaintiffs have standing under the RICO statute, the Amended Complaint fails, in multiple respects, to satisfy Rule 9(b)'s heightened pleading standard for alleging RICO claims sounding in fraud.   First, the Amended Complaint is devoid of any particularized allegation about the purported fraudulent invoices at the heart of Plaintiffs' RICO claims. Astonishingly, the Amended Complaint references the word "invoices" fifty-four times without alleging the amount or date of a single invoice or specifying what these invoices were for. Second, Plaintiffs fail to allege facts to support a finding that they reasonably relied on Defendants' purported fraudulent statements, a critical element of any RICO claim premised on wire or mail fraud.  *Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171, 178 (2d Cir. 2004) ("[I]n order to prevail in a civil RICO action predicated on any type of fraud, including bank fraud, the plaintiff must establish 'reasonable reliance' on the defendants' purported misrepresentations or omissions.").   Third, Plaintiffs fail to alleged facts demonstrating that the purported predicate acts of racketeering "amount to or pose a threat of continuing criminal activity," another prerequisite to a valid RICO claim.  *D.R.S. Trading Co., Inc. v. Fisher*, No. 01 CIV. 8028 (WHP), 2002 WL 1482764, at *3 (S.D.N.Y. July 10, 2002).  Finally, Plaintiffs fail to allege a factual "basis for a finding of a conscious agreement among the defendants," a necessary element of its RICO conspiracy claim.  *Picard v. Kohn*, 907 F. Supp. 2d 392, 400 (S.D.N.Y. 2012).

If the Court dismisses Plaintiffs' federal RICO claims, it should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismiss those claims without prejudice.[4]  *See, e.g.*, *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 236 (E.D.N.Y. 2014) (dismissing federal RICO claims and declining to exercise

---

[4] The citizenships of the parties do not support diversity jurisdiction. *See* Am. Compl. ¶¶ 21-30.

supplemental jurisdiction over state law claims).  Alternatively, for the reasons herein, the Court should dismiss Plaintiffs' state law fraud and unjust enrichment causes of action for failure to state a claim.

## STATEMENT OF FACTS

In 2007, Related began working with Dr. Carleton Ruthling to develop a solution to reduce the cost of procuring the high-end glass façade (*i.e.*, curtain wall) Related needed to enclose its many high-rise buildings under construction.  Am. Compl. ¶ 38.  After several years of research and development, Dr. Ruthling formed Tesla as the limited liability company that would ultimately become the vehicle for the joint venture with Related.  *See id.* at ¶ 2.  Tesla was to become a first-of-its-kind, vertically integrated façade company that would design, manufacture, and install curtain wall for Related at prices far below the prevailing market rate. *See id.* at ¶ 38.

To provide these services, Tesla utilized various intermediaries, several of which are defendants in this action.  Defendant Skye Holdings Ltd. ("Skye Holdings") served as the holding company for Dr. Ruthling's joint venture with Related as to Tesla.  Hudson Walls LLC ("Hudson") and Skye Supply LLC ("Skye Supply") were vendors.  Hudson supplied labor for Tesla's projects, while Skye Supply handled shipping logistics.  Christopher Du was the certified public accountant that maintained Tesla's books and records, and Jeaneah Paik is Dr. Ruthling's wife.[5]

In 2012, Related and Dr. Ruthling, through Skye Holdings, entered into a written agreement (the "Term Sheet") to govern their joint venture as to Tesla.  *See id.* at ¶ 69. Because Tesla was a startup company, Related anticipated it would need to advance Tesla funds to support cash flow and cover expenses as Tesla performed its first projects.  Accordingly,

_____
[5] Plaintiffs have not served Ms. Paik, and she is therefore presently not a party to this action.

Related, through its wholly owned subsidiary MBM, provided Tesla with certain project advances. *Id.* at ¶ 57. The Term Sheet established the terms upon which Related would advance these funds to Tesla and upon which Tesla would repay Related, if at all, for any such advances. Specifically, the Term Sheet provided that Related would recapture the advances from Tesla's future profits.

Unfortunately, Budd and Related worked to secretly bring about Tesla's demise and form a competing business, New Hudson Facades, before Tesla earned any profits. Dr. Ruthling subsequently filed suit against Budd on Tesla's behalf for, *inter alia*, breach of fiduciary duty and ultimately obtained a favorable verdict. *Tesla Wall Systems, LLC*, No. 1:14-cv-08564-LLS, Doc. No. 1 (S.D.N.Y. Oct. 27, 2014); Doc. No. 87 (S.D.N.Y. Nov. 29, 2016). During that litigation, Tesla exposed Related's role in the scheme to usurp Tesla's business opportunities.

In retaliation for Tesla filing suit against Budd, Related sued Tesla in New York state court to recover the aforementioned advances. *The Related Companies, L.P.*, Index No. 650778/2015, Doc. No. 1 (N.Y. Sup. Ct., N.Y. Cty., Mar. 13, 2015). In that action, Related theorized, but never pleaded, that Dr. Ruthling diverted money from Tesla to keep the company from recognizing the profits necessary to trigger repayment under the Term Sheet. After ample discovery, Related was unable to support its claims. Recently, the court held that Related cannot recover the advances from Tesla unless Tesla becomes profitable. *Id.* at Doc. No. 198 (N.Y. Sup. Ct., New York Cty., Apr. 17, 2017). Although the court acknowledged that Tesla is no longer a going concern, it reasoned Tesla might eventually earn profits if it recovers in the action against Budd. *See id.* The court entered a final judgment in Related's favor to allow the parties to appeal its summary judgment order. *Id.* at Doc. No. 220 (N.Y. Sup. Ct., New York Cty., June 21, 2017).

Notwithstanding its pending suit on the contract to recover the advances, Plaintiffs' commenced this action to recover the same advances, this time asserting claims sounding in fraud.  Generally, Plaintiffs allege that: (1) Dr. Ruthling "fraudulently induced" them to advance funds to Tesla, Hudson, and Related Supply; (2) the various Defendants submitted false invoices; and (3) the Defendants ultimately pocketed the money for their own use.  Am. Compl. at ¶¶ 1–2. Despite the magnitude of their Amended Complaint, which includes 159 separate allegations, Plaintiffs fail to allege a single fact concerning the contents of these purported "fraudulent invoices," including their respective amounts or what they were for.  Rather Plaintiffs cite dozens of wire transfers and baldly assert that they made these transfers based on "Defendants' omissions and misrepresentations."  Am. Compl. ¶ 57.

Specifically, Plaintiffs assert claims for violations of the federal RICO statute, 18 U.S.C. 1962(c) and 18 U.S.C. 1962(d) (Counts VI and V), common law fraud (Count I), breach of fiduciary duty (Count VI), aiding and abetting breach of fiduciary duty (Count II), negligent misrepresentation (Count III), and unjust enrichment (Count VII).[6]  Although Plaintiffs initially filed suit in Delaware state court, Defendants' removed the case and subsequently filed a motion to transfer to this Court.  Doc. No. 1.  Ultimately, the parties agreed that transfer was appropriate. Doc. No. 44.  Defendants now move to dismiss for the reasons herein.

## LEGAL STANDARD

When considering a 12(b)(6) motion to dismiss, the Court must accept as true the allegations in the complaint, drawing all reasonable inferences in the light most favorable to the plaintiff.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).  Even so, a complaint offering mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of

---

[6] Plaintiffs' claims for aiding and abetting fraud and negligent misrepresentation are solely against Defendant Du.

action" is insufficient. *Ashcroft v. Iqbal*, 556 U.S 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Generally, the complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). In alleging fraud, however, the general rule is inapplicable, and a party must instead "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "[S]tringent adherence to the particularity requirement is important . . . where the predicate fraud allegations provide the only link to federal jurisdiction, and the opportunity for an award of treble damages—each of which might serve as significant in terrorem settlement leverage." C*lifford v. Hughson*, 992 F. Supp. 661, 666 (S.D.N.Y. 1998) (quoting *Celpaco, Inc. v. MD Papierfabriken*, 686 F. Supp. 983, 988 (D. Conn. 1988)).

## ARGUMENT

This Court has recognized that "[f]or plaintiffs seeking to score a tactical edge or to deal the heaviest possible vengeful blow to the defendant's personal reputation, shocking RICO accusations" can be devastatingly effective, while also inflicting the "added pain" of extraordinary litigation costs. *Gross v. Waywell*, 628 F. Supp. 2d 475, 480 (S.D.N.Y. 2009). Accordingly, the Court "strive[s] to flush out frivolous RICO allegations at an early stage of the litigation." *Katzman*, 167 F.R.D. at 655 (quoting *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir.1990)).

Plaintiffs invoke the federal RICO statute, "the litigation equivalent of a thermonuclear device," solely to punish Dr. Ruthling for filing suit against Michael Budd on Tesla's behalf and, in doing so, exposing Related's role in the scheme to abscond with Tesla's business. *Id.* Plaintiffs, however, lack standing to assert RICO claims. Further, even if Plaintiffs had standing,

their RICO claims do not satisfy Rule 9(b)'s heightened standard for pleading fraud with particularity.

The Court should thus: (1) dismiss Plaintiffs' federal RICO claims; and (2) decline to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismiss those claims without prejudice.  Alternatively, if the Court exercises supplemental jurisdiction over Plaintiffs' state law claims, it should dismiss Plaintiffs' causes of action for common law fraud and unjust enrichment for failure to state a claim

## I.      Plaintiffs Lack Standing to Assert Claims Under the Federal RICO Statute.

A plaintiff asserting a civil cause of action under the federal RICO statute "must satisfy RICO's standing requirements:  (1) a violation of [18 U.S.C. 1962]; (2) injury to business or property; and (3) causation of the injury by the violation."  *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 767 (2d Cir. 1994) (quoting *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir.1990)).  "RICO standing is a more rigorous matter than standing under Article III," and a RICO plaintiff can only recover "when his or her actual loss becomes *clear and definite*."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) (emphasis added).  Where the extent of damages is still unknown, "a RICO injury remains speculative and unprovable."  *DLJ Mortg. Capital*, 726 F. Supp. 2d at 237 (quoting *Harbinger Capital Partners Master Fund I, Ltd. v. Wachovia Capital Markets, LLC*, No. 07-CV-8139 DC, 2008 WL 3925175, at *4 (S.D.N.Y. Aug. 26, 2008)).  Thus, "an allegedly defrauded creditor's losses will be uncertain, and RICO injury is speculative, when contractual or other legal remedies remain which hold out a real possibility that the debt, and therefore the injury, may be eliminated or significantly reduced."  *Id.* (quoting *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 59 (2d Cir. 1998)).

As established in both this case and in Action 2, Related is a creditor attempting to recover certain advances it made to Tesla. *Compare The Related Companies, L.P.*, Index No. 650778/2015, Doc. No. 1 (N.Y. Sup. Ct., New York Cty., Mar. 13, 2015), *with* Am. Compl. ¶¶ 1–4, 7, 8, 10, 16.  In Action 2, Tesla sought to recover the advances by asserting contractual claims.  *Id.*  The parties have not resolved that action, and the court recently acknowledged that the parties' Term Sheet conditions Related's right to recover the advances on Tesla's future profitability—an event that never came to fruition.  *Id.* at Doc. No. 198 (N.Y. Sup. Ct., New York Cty., Apr. 17, 2017).  The court also found that Tesla is no longer a going concern, but nevertheless entered judgment in Related's favor, reasoning that Tesla might become profitable in the future if it recovers damages in the action against Budd.  Am. Compl. ¶ 2, n.1; *The Related Companies, L.P.*, Index No. 650778/2015, Doc. No. 198 (N.Y. Sup. Ct., New York Cty., Apr. 17, 2017).  The Court has stayed execution of the judgment while the parties' appeal its order. *Id.* at Doc. No. 220 (N.Y. Sup. Ct., New York Cty., June 21, 2017).

Plaintiffs unquestionably lack standing to assert RICO claims until their contractual claims are resolved because "conceivable contingencies" could abate their losses.  *Motorola Credit Corp.*, 322 F.3d at 136 (remanding action to the district court to dismiss the plaintiff's RICO claims because damages were not "clear and definite"); *accord Harbinger Capital Partners Master Fund*, 347 F. App'x at 714 (affirming dismissal of creditors' RICO claims in light of pending bankruptcy action that might "mitigate or remedy" the plaintiffs' damages "even though . . . recovery in the pending action might be a forlorn hope"); *Sky Med. Supply Inc.*, 17 F. Supp. 3d 207 (holding that the "clear and definite" principle is not limited to creditors and debtors and dismissing RICO claims because the plaintiff's alleged injury was "contingent upon the results of pending litigation in state court and arbitration proceedings"); *DLJ Mortg. Capital*,

726 F. Supp. 2d 225 (holding creditors right to recover in contract "must be conclusively resolved" before bringing RICO claims).  Specifically, depending on the outcome of Action 2 and whether Plaintiffs' are ultimately able to recover the advances on their contractual claims, Plaintiffs' purported RICO injury "may be eliminated or significantly reduced."  *DLJ Mortg. Capital*, 726 F. Supp. 2d at 237.  Plaintiffs cannot seriously contest that this is a real possibility and "a dismissal of the complaint at a later stage of the proceedings would be wasteful of the parties' and the Court's time, energies and resources . . . ."  *Gross v. Waywell*, 628 F. Supp. 2d 475, 479 (S.D.N.Y. 2009).  The Court should therefore dismiss Plaintiffs' RICO claims for lack for standing.[7]

## II.     Plaintiffs' RICO Claims Fail Under Rule 9(b)'s Heightened Pleading Standard.

Even if Plaintiffs' have RICO standing, their RICO claims fail to satisfy the heightened pleading requirements of Rule 9(b).  *Am. Fed'n of State, Cty. & Mun. Emps. Dist. Council 37 Health & Sec. Plan v. Bristol-Myers Squibb Co.*, 948 F. Supp. 2d 338, 345–46 (S.D.N.Y. 2013) ("[C]laims based on mail and wire fraud are subject to the heightened pleading standard established by Rule 9(b).").

Plaintiffs assert two RICO claims against the Defendants, one under 18 U.S.C. § 1962(c) and the other under 18 U.S.C. § 1962(d).  To state a claim under 18 U.S.C. § 1962(c), a plaintiff must allege facts demonstrating: "(1) that the defendant (2) through the commission of two or more predicate acts (3) constituting a 'pattern' of 'racketeering activity' (5) directly or indirectly participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce."  *Mackin v. Auberger*, 59 F. Supp. 3d 528, 542 (W.D.N.Y. 2014) (quoting *42 Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983)).  A claim for RICO conspiracy under 18

---

[7]  RICO standing is not jurisdictional, and the Court's dismissal should therefore be pursuant to Rule 12(b)(6) rather than 12(b)(1).  *DLJ Mortg. Capital*, 726 F. Supp. 2d at 236.

U.S.C. § 1962(d), on the other hand, requires the plaintiff to sufficiently plead that the defendants "agreed to commit at least two predicate acts in furtherance of a pattern of racketeering activity, and that these agreed-upon acts, if carried out, would have formed a pattern of racketeering activity." *Bristol-Myers Squibb Co.*, 948 F. Supp. 2d at 345.

In a rambling, and often inconsistent, 55-page Amended Complaint, Plaintiffs— sophisticated real estate developers worth billions of dollars—paint themselves as naive businessmen who were repeatedly "duped" by a single individual to repeatedly advance millions of dollars over a period of years to pay for "fraudulent invoices." Plaintiffs fail, however, to provide actual factual support for their fanciful RICO claims. For this additional reason, these claims fail.

### A.      The Amended Complaint Fails to Allege Predicate Acts of Fraud with Particularity.

At the heart of Plaintiffs' RICO claims is the allegation that various Defendants submitted "fraudulent invoices," which Dr. Ruthling and/or Tesla paid with advances from Plaintiffs. Remarkably, the 55-page Amended Complaint references these invoices 54 times without identifying a single invoice, let alone alleging the amount or date of a single invoice or specifying what these invoices were for.[8]

> Plaintiffs' reliance on "mail and/or wire fraud" as the predicate offenses, by operation of Twombly's plausibility test and the particularity requirement of Federal Rule of Civil Procedure 9(b) . . . demands greater specificity in the pleadings. Such particularity would require more details regarding the alleged

---

[8] Perplexingly, Plaintiffs do allege that Dr. Ruthling sent an invoice for a legal bill that Tesla had already paid. Am. Compl. ¶ 67. This allegation, however, shows the invoice to Related for reimbursement of legal fees was proper as to both the nature of the actually services and the amount of such service. The invoice simply had already been paid, and indeed, the law firm affirmatively notified Related of the prior payment. Moreover, the invoice was issued by, and the payment by Related was made to, a third-party law firm, and not any of the Defendants in this action. That this transaction is the sole factual allegation Related pleads with any particularity speaks loudly as to the nature of this action. Plaintiffs contend this allegation supports their claim for fraud when, in fact, it does the opposite.

> predict acts in which each particular defendant was directly or indirectly involved or had responsibility, as well as information concerning where, when and by which defendant any representations involved in the alleged fraudulent scheme constituting deception of Plaintiffs were communicated by use of the mail and/or wires, and how such statements actually deceived Plaintiffs.

*Gross v. Waywell*, 628 F. Supp. 2d 475, 494–95 (S.D.N.Y. 2009).  Here, Plaintiffs do not offer *any* of these specifics and instead appear to be operating under the assumption that repeatedly invoking the term "fraudulent invoices" will be sufficient to survive the pleading stage.  These are the precise types of allegations Rule 9(b)'s heightened pleading standard are meant to proscribe, and the Court should not permit Plaintiffs to move forward with claims meant only to tarnish Defendants' reputations.  *Gerstenfeld v. Nitsberg*, 190 F.R.D. 127, 131 (S.D.N.Y. 1999) ("The purpose of Rule 9(b)'s heightened pleading requirements is threefold: (1) to enable the defendant to defend himself through adequate notice of the claims; (2) to protect the defendant's reputation from pending charges that are without any particularized basis; and (3) to derail 'strike suits' in which the threat of RICO liability is used to increase leverage in settlement negotiations in business disputes unrelated to racketeering.").

### B.    The Amended Complaint Fails to Allege a Pattern of Racketeering.

As noted *supra*, to successfully plead a RICO claim a plaintiff must allege a "pattern" of "racketeering activity."  *D.R.S. Trading Co.*, 2002 WL 1482764, at * 3.  "To plead a pattern of racketeering activity, a plaintiff must allege (1) at least two predicate acts of racketeering occurring within a ten-year period; (2) that these predicate acts are related to each other; and (3) that these predicate acts amount to or pose a threat of continuing criminal activity."  *Id.*  The third prong in this analysis is commonly referred to as the "continuity" requirement.  *Id.*  To satisfy the continuity requirement, a plaintiff may allege "either a closed-ended or an open-ended pattern of racketeering activity."  *Id.*  Plaintiffs do not specify the theory under which they are proceeding, but there can be "no open-ended continuity because there is no likelihood that the

fraud against [Plaintiffs] will continue since [Plaintiffs have] terminated [their] relationship with [Defendants]." *Id.* at \*5.  Closed-ended continuity is therefore Plaintiffs' only option.

Closed-ended continuity is a "primarily temporal concept" that "consists of a past history of criminal conduct that extends over a 'substantial period of time.'" *Id.* at \*3, \*4.  It does not exists "[w]hen fraudulent conduct alleged involves such a limited number of perpetrators, small number of victims, and limited goal." *Id.* at \*4.  Moreover, the Second Circuit has never held a period of less than two years sufficient to satisfy this requirement, and district courts routinely dismiss complaints when the allegations fail to establish the duration of the purportedly fraudulent conduct exceeds that amount of time. *Kilkenny v. Law Office of Cushner & Garvey, L.L.P.*, No. 08-CV-588 KMK, 2012 WL 1638326, at \*7 (S.D.N.Y. May 8, 2012) (collecting cases); *Pieper v. Benerin, LLC*, 972 F. Supp. 2d 321, 333 (E.D.N.Y. 2013) ("Because the alleged acts of extortion and mail fraud do not span a period longer than two years, they cannot satisfy the Plaintiff's burden of alleging close-ended continuity.").

Regarding the time-frame of Defendants' purported fraudulent conduct, Plaintiffs' allegations are less than clear.  Plaintiffs generally refer to "fraudulent invoices" that Defendants sent "between 2012 and 2014," (Am. Compl. at ¶ 60) but that allegation is insufficient to show the purported fraud spanned longer than two years.  For instance, if Defendants sent the first fraudulent invoice on December 31, 2012 and the last on January 1, 2014, the alleged criminal conduct would only span a year.  For this additional reason, the Court must dismiss Plaintiffs' federal RICO claim.  Moreover, as noted, Plaintiffs have failed to identify *a single* invoice that was purportedly fraudulent.  If Plaintiffs cannot allege a single fraudulent act they, of course, cannot allege a pattern of conduct over time.

**C.      The Amended Complaint Fails to Allege Reasonable Reliance.**

Plaintiffs' RICO claim suffers from yet another fatal defect:  It fails to adequately allege reasonable reliance.[9]  The Amended Complaint alleges that from 2007 to 2014 Defendants carried out a complex scheme to induce Plaintiffs to advance "millions of dollars" to Related Supply, Hudson, and Tesla by misrepresenting to Plaintiffs that additional funding was required for various projects and by submitting fraudulent invoices.  *See* Am. Compl. ¶¶ 129-132.  In doing so, Plaintiffs allege that Defendants committed mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343.

To properly allege federal mail and wire fraud, Plaintiffs must show "(1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme."  *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996).  While the mail fraud and wire fraud statutes do not contain a reliance component, the Second Circuit has imported a reasonable reliance requirement into the causation element for RICO claims alleging predicate acts of mail or wire fraud.  *City of New York v. Cyco.Net, Inc.*, 383 F. Supp. 2d 526, 559 (S.D.N.Y. 2005).  Thus, "in order to prevail in a civil RICO action predicated on any type of fraud, . . . the plaintiff must establish 'reasonable reliance' on the defendants' purported misrepresentations or omissions."  *Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171, 178 (2d Cir. 2004).

"A plaintiff cannot close his eyes to an obvious fraud, and cannot demonstrate reasonable reliance without making inquiry and investigation if he has the ability, through ordinary

---

[9] The reasonableness of Plaintiffs' reliance is properly considered on a motion to dismiss.  *See Terra Sec. Asa Konkursbo v. Citigroup, Inc.*, 740 F. Supp.2d 441, 449 (S.D.N.Y. 2010) ("As an initial matter, the Court notes that the reasonableness of reliance is properly considered at the motion to dismiss stage.").

intelligence, to ferret out the reliability or truth about an investment." *Crigger v. Fahnestock and Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006).  And "the greater the sophistication of the [plaintiff], the more inquiry that is required."  *Id.* at 235.  In New York, courts are "particularly disinclined to entertain claims of [reasonable] reliance" when "sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access." *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 737 (2d Cir. 1984).

In the Amended Complaint, Plaintiffs acknowledge their own sophistication. "Related is a privately owned real estate firm that oversees the development, acquisition, management, finance, marketing, and sales for mixed-use, residential, retail, and office properties.  MBM is an affiliate of Related that advanced funds to Related and Ruthling's joint venture."  *See* Am. Compl. ¶ 4.  Despite having an affirmative duty to protect themselves from misrepresentations by investigating the details of their transactions with Defendants, Plaintiffs do not allege they conducted any due diligence.  Not before advancing Related Supply more than $5 million over the course of five years, or before awarding Related Supply bids on Related's real estate projects. *Id.* ¶ 52.  There is no allegation that Plaintiffs performed any investigation before Dr. Ruthling and Related entered into a joint venture "to provide curtain and window wall systems to real estate projects owned or managed by Related or its affiliates."  *Id.* at 5.  Nor is there an allegation of due diligence prior to Plaintiffs advancing Tesla and Hudson approximately $15 million between 2012 and 2014.  *Id.* ¶ 55.

In the most general terms, Plaintiffs allege that they made repeated efforts to verify Defendants' representations.  *Id.* ¶¶ 12, 75.  But beyond an example from February 2013 where Related "threatened to shut down Tesla if Ruthling did not provide backup for Defendants' expenses and the basis for Ruthling's funding requests," there are no allegations in the Amended

Complaint that Plaintiffs did anything to protect themselves or the "millions of dollars" they now seek to recover. *Id.* ¶ 75. Plaintiffs cannot now claim they reasonably relied on Defendants' representations.

Moreover, the Amended Complaint alleges that these highly sophisticated Plaintiffs continued their unwitting payments to Defendants long after Plaintiffs had been put on notice, according to their own allegations, that the Defendants' representations were unreliable. For example, the Amended Complaint alleges that almost immediately after being awarded the NLSD project in 2011, Defendants began going back on their representations about the profitability and funding for the project. *See id.* ¶¶ 39-41. Nevertheless, Plaintiffs claim that two years later, they were defrauded again by the exact same "tactics" after they awarded Defendants the 111 W. Wacker project in 2013. *See id.* ¶¶ 43-46. To the extent these highly sophisticated Plaintiffs' blind reliance was ever reasonable, it certainly was not reasonable after Plaintiffs were, by their own allegations, put on notice of Defendants' pattern of conduct. Therefore, in their attempt to allege a fraud within every routine business transaction, Plaintiffs have succeeded only in pleading themselves out of court.

### D.     The Amended Complaint Fails to State a Claim for RICO Conspiracy.

Plaintiffs' claim under 18 U.S.C. § 1962(d) for RICO conspiracy fails for two reasons. First, as shown above, because Plaintiffs' substantive RICO claim is not viable, the RICO conspiracy claim should be dismissed. *See Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996), *vacated on other grounds*, 525 U.S. 128 (1998) ("[A]ny claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient."); *Elsevier, Inc. v. W.H.P.R., Inc.*, 692 F.

Supp. 2d 297, 312 (S.D.N.Y. 2010) (explaining that "the Court's dismissal of the § 1962(c) claim mandates dismissal of the [RICO] conspiracy claim").

Second, a plaintiff alleging the existence of a RICO conspiracy must allege, at a minimum, "some factual basis for a finding of a conscious agreement among the defendants." *Picard v. Kohn*, 907 F. Supp. 2d 392, 400 (S.D.N.Y. 2012); *see also Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990) ("Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement"). Absent from the Amended Complaint is any detail regarding the nature and form of an agreement among the Defendants. Beyond conclusory allegations, Plaintiffs do not explain when the agreement was made, how the agreement came about, or what was agreed upon.

## III.   The Court Should Decline to Exercise Supplemental Jurisdiction Over Plaintiffs' State Law Claims.

If the Court dismisses Plaintiffs' federal RICO claims, it should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismiss those claims without prejudice.[10] *See, e.g.*, *Sky Med. Supply Inc.*, 17 F. Supp. 3d at 236 (dismissing federal RICO claims and declining to exercise supplemental jurisdiction over state law claims). Plaintiffs have not asserted any other federal claims, and Plaintiffs have not alleged there is diversity of citizenship among the parties. Because there are no "exceptional circumstances" justifying the Court's exercise of supplemental jurisdiction, it should dismiss Plaintiffs' state law claims. *Id.* ("In the interest of comity, the Second Circuit instructs that absent exceptional circumstances, where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment

---

[10] The citizenships of the parties do not support diversity jurisdiction.

grounds, courts should 'abstain from exercising pendent jurisdiction." (quoting *Birch v. Pioneer Credit Recovery, Inc.*, No. 06–CV–6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007))).

**IV.    Alternatively, the Court Should Dismiss Plaintiffs' State Law Fraud and Unjust Enrichment Causes of Action for Failure to State a Claim.**

If the Court exercises jurisdiction over Plaintiffs' state law claims, it should dismiss Plaintiff's causes of action for fraud and unjust enrichment.   As noted *supra*, the Amended Complaint does not satisfy the heightened pleading requirements of Rule 9(b) for alleging fraud. Further, Plaintiffs' unjust enrichment claim fails under the much lower notice pleading standard.

**A.    The Amended Complaint Fails to State a Claim for Common-Law Fraud.**

"Under New York law, a plaintiff alleging fraud must show five elements by clear and convincing evidence: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of plaintiff; and (5) resulting damage to the plaintiff."  *Herzfeld v. JPMorgan Chase Bank*, N.A., 354 F. App'x 488, 489 (2d Cir. 2009).

Plaintiffs' claim fails in multiple respects.  First, as addressed at length herein, Plaintiffs' allegations concerning the purportedly fraudulent invoices are woefully insufficient to show Defendants made a material misrepresentation of fact.  *See* Fed. R. Civ. P. 9(b).  Specifically, Plaintiffs have failed to identify a single fraudulent invoice.  Further, as set forth *supra*, Plaintiffs' own allegations (or lack thereof) defeat its assertion that it reasonably relied on Defendants' purported misstatements.  Put simply, Plaintiffs are sophisticated parties and yet they fail to allege they took steps to protect themselves and the "millions of dollars" they now seek to recover.  Am. Compl. ¶ 75.  Plaintiffs cannot now claim they reasonably relied on Defendants' purported misrepresentations, and the Court should therefore dismiss Plaintiffs' claim for common law fraud.

**B.     The Amended Complaint Fails to State a Claim for Unjust Enrichment.**

Plaintiffs' claim for unjust enrichment is barred because there is a valid and enforceable Term Sheet that governs the subject matter at issue – the "millions of dollars" advanced by Plaintiffs.  Under New York law, an enforceable contract between the parties concerning a particular subject matter precludes quasi-contractual recovery in unjust enrichment for claims arising out of that subject matter.  *See Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006).  This is true "even if one of the parties to the lawsuit is not a party to the contract."  *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 196 (S.D.N.Y. 2009); *see also Law Debenture v. Maverick Tube Corp.*, No. 06-CV-14320, 2008 WL 4615896, at *13 (S.D.N.Y. Oct. 15, 2008) ("The Court finds the trend of recent New York state and federal decisions to be persuasive and concludes that a claim for unjust enrichment, even against a third party, cannot proceed when there is an express agreement between two parties governing the subject matter of the dispute.").

Here, the Amended Complaint alleges that the November 28, 2012 Term Sheet between Skye Holdings and Related governed the business of Tesla.  *See* Am. Compl. ¶ 69.  This is not in dispute – both Related and Tesla stipulated to this fact in Action 2.  *See The Related Companies, L.P.,* Index No. 650778/2015, Doc. No. 198 (N.Y. Sup. Ct., New York Cty., Apr. 17, 2017).  The parties' rights and obligations under the Term Sheet, including Related's right to repayment of the advances, if at all, was litigated in Action 2.  In fact, Related in Action 2 sought to recover the very same advances at issue in this lawsuit alleging, in part, that Tesla was in breach of the Term Sheet.  *Id.* at Doc. No. 1 (N.Y. Sup. Ct., New York Cty., Mar. 13, 2015).  The judgment entered against Tesla in Action 2 and referenced in the Amended Complaint, awarded Related relief on its breach of contract claim in the sum of $15,356,464.60.  *Id*. at Doc. No. 220 (N.Y.

Sup. Ct., New York Cty., June 21, 2017).  The remaining quasi-contractual claims for money had and received and unjust enrichment were dismissed as duplicative of the contract claim.  *Id.* at Doc. No. 198 (N.Y. Sup. Ct., New York Cty., Apr. 17, 2017).

Plaintiffs now attempt to revive the failed unjust enrichment claim here, alleging it is against equity and good conscience to permit the Defendants to retain the advances.  *See* Am. Compl. ¶¶ 154–159.  This argument cannot be reconciled with the procedural posture of Action 2, wherein the court has ordered Tesla to repay the advances, or with well-established law that prohibits a plaintiff from recovering on both a quasi-contractual claim and a breach of contract claim.  *Palatkevich v. Choupak*, 152 F. Supp. 3d 201, 222 (S.D.N.Y. 2016).

## CONCLUSION

For the reasons herein, the Court should: (1) dismiss Plaintiffs' federal RICO claims; and (2) decline to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismiss those claims without prejudice.  Alternatively, if the Court exercises supplemental jurisdiction over Plaintiffs' state law claims, it should dismiss Plaintiffs' causes of action for common law fraud and unjust enrichment for failure to state a claim.

Dated:  New York, New York
      July 7, 2017

                                    **EVERSHEDS SUTHERLAND (US) LLP**

                              By: /s/ Lawrence A. Dany III
                                    Ronald W. Zdrojeski
                                    Lawrence A. Dany III
                                    1114 Avenue of the Americas, 40th Floor
                                    New York, New York 10036
                                    (212) 389-5000

                                    *Attorneys for Defendants Carleton Ruthling,*
                                    *Tesla Walls LLC, Hudson Walls LLC, and*
                                    *Skye Holdings Ltd.*