UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE RELATED COMPANIES, L.P. and MBM SUPPLY COMPANY LLC, <br><br> Plaintiffs, <br><br> -against- <br><br> CARLETON RUTHLING, TESLA WALLS LLC, HUDSON WALLS LLC, RELATED SUPPLY LTD., JEANEAH PAIK, CHRISTOPHER DU, SKYE HOLDINGS LTD., and SKYE SUPPLY LLC, <br><br> Defendants. | Civil Action No.  1:17-CV-4175 <br><br> Hon. Jed S. Rakoff |

### MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CHRISTOPHER DU'S MOTION TO DISMISS THE COMPLAINT

Dated: July 17, 2107

BOIES SCHILLER FLEXNER LLP
Nicholas A. Gravante, Jr.
Luke Nikas
575 Lexington Avenue
New York, New York 10022
(212) 446-2300

Karen C. Dyer
121 South Orange Avenue
Orlando, Florida 32801
(407) 425-7118

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 2

ARGUMENT .................................................................................................................. 4

I.   PLAINTIFFS HAVE MADE A *PRIMA FACIE* SHOWING THAT DU IS SUBJECT TO NEW YORK
     LONG ARM JURISDICTION. ................................................................................. 4

     A.   *Legal Standard.* ........................................................................................ 4

     B.   *Personal Jurisdiction Is Proper Under C.P.L.R. § 302(a)(3)(ii).* ................... 5

          1.   *Du Committed Tortious Acts Outside the State.* ............................... 5

          2.   *The Claims Asserted Arise from Those Acts.* ................................... 5

          3.   *Du's Conduct Caused Injury in New York.* ....................................... 5

          4.   *Du Should Have Reasonably Expected that His Conduct Would Have
               Consequences in New York.* ........................................................... 7

          5.   *Du Derived Substantial Revenue from Interstate Commerce.* ............ 8

     C.   *Personal Jurisdiction Based on Conspiracy is Proper Under C.P.L.R. §
          302(a)(2).* ............................................................................................... 9

          1.   *Plaintiffs Have Made a Prima Facie Showing of a Conspiracy.* ........ 10

          2.   *There Are Numerous Examples of Du's Involvement in the Conspiracy.* ...... 12

     D.   *The Exercise of Personal Jurisdiction Over Du Comports with Due Process.* ......... 13

II.  PERSONAL JURISDICTION OVER DU IS ALSO WARRANTED UNDER 18 U.S.C. § 1965(B) .......... 15

III. PLAINTIFFS HAVE PROPERLY STATED RICO CLAIMS AGAINST DU. ............................. 17

     A.   *Du Participated in the Operation and/or Management of Several RICO
          Enterprises.* ............................................................................................ 17

     B.   *The Complaint Alleges Du's Predicate Acts of Fraud with Particularity.* ............. 19

     C.   *Plaintiffs Properly Alleged RICO Enterprises.* ............................................. 21

     D.   *Plaintiffs Properly Alleged That Du Was Part of a RICO Conspiracy.* ............... 23

i

IV.     PLAINTIFFS PROPERLY STATED COMMON LAW CLAIMS AGAINST DU..................................... 24

    A.     *Plaintiffs Have Properly Pled Common Law Fraud*.................................... 24

    B.     *Plaintiffs Have Properly Pled Negligent Misrepresentation.*..................... 24

    C.     *Plaintiffs Have Properly Pled Unjust Enrichment*..................................... 25

CONCLUSION...................................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Anatian v. Coutts Bank (Switzerland) Ltd.*,
    193 F.3d 85 (2d Cir. 1999) ................................................................................ 21

*Asahi Metal Indus. Co. v. Superior Court*,
    480 U.S. 102 (1987) ........................................................................................ 15

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
    171 F.3d 779 (2d Cir. 1999) .............................................................................. 6

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
    305 F.3d 120 (2d Cir. 2002) ............................................................................ 13

*Boyle v. United States*,
    556 U.S. 938 (2009) ........................................................................................ 22

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ........................................................................................ 13

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
    69 F. Supp. 3d 342 (S.D.N.Y. 2014) .............................................................. 16

*Cedric Kushner Promotions, Ltd. v. King*,
    533 U.S. 158 (2001) ........................................................................................ 22

*Chloe v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010) .............................................................................. 4

*Chrysler Capital Corp. v. Century Power Corp.*,
    778 F. Supp. 1260 (S.D.N.Y. 1991) ...................................................... 9, 11, 12

*Cleft of the Rock Found. v. Wilson*,
    992 F. Supp. 574 (E.D.N.Y. 1998) .............................................................. 10, 11

*Compare Vista Food Exchange, Inc. v. Champion Foodservice, L.L.C.*,
    No. 14 Civ. 804, 2014 WL 3857053 (S.D.N.Y. Aug. 5, 2014) ...................... 8

*De Sole v. Knoedler Gallery, LLC*,
    974 F. Supp. 2d 274 (S.D.N.Y. 2013) ............................................................ 19

*Doe v. Delaware State Police*,
    939 F. Supp. 2d 313 (S.D.N.Y. 2013) .............................................................. 4

*Elsevier Inc. v. W.H.P.R., Inc.*,
   692 F. Supp. 2d 297 (S.D.N.Y. 2010)..................................................................... 16

*F.D.I.C. v. Hodge*,
   50 F. Supp. 3d 327 (E.D.N.Y. 2014) ....................................................................... 11

*Felland v. Clifton*,
   682 F.3d 665 (7th Cir. 2012) ....................................................................... 8, 14, 15

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004)..................................................................................... 21

*First Fed. Savings and Loan Assn. of Pittsburgh v. Oppenheim, Appel, Dixon & Co.*,
   629 F. Supp. 427 (S.D.N.Y. 1986)........................................................................... 10

*Georgia Malone & Co., Inc. v. Ralph Rieder*,
   86 A.D.3d 406 (1st Dep't 2011) ............................................................................... 25

*Global Intellicom, Inc. v. Thomson Kernaghan & Co.*,
   No. 99 Civ. 342, 1999 WL 544708 (S.D.N.Y. July 27, 1999) ................................. 14

*Hargrave v. Oki Nursery, Inc.*,
   636 F.2d 897 (2d Cir. 1980)....................................................................................... 6

*In re Sumitomo Copper Litig.*,
   120 F. Supp. 2d 328 (S.D.N.Y. 2000)................................................................... 9, 14

*In re Sumitomo Copper Litig.*,
   995 F.Supp. 451 (S.D.N.Y. 1998)............................................................................ 19

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)................................................................................................. 14

*Leasco Data Processing Equipment Corp. v. Maxwell*,
   468 F.2d 1326 (2d Cir. 1972)................................................................................... 10

*Maersk, Inc. v. Neewra, Inc.*,
   687 F.Supp.2d 300 (S.D.N.Y. 2009)........................................................................ 19

*Maersk, Inc. v. Neewra, Inc.*,
   554 F. Supp. 2d 424 (S.D.N.Y. 2008)...................................................................... 14

*McLaughlin v. Anderson*,
   962 F.2d 187 (2d Cir. 1992)..................................................................................... 19

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996).................................................................................. 14, 15

iv

*PT United Can Co. Ltd. v. Crown Cork & Seal Co.*,
    138 F.3d 65 (2d Cir. 1998) ............................................................................. 16

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ...................................................................................... 17

*Sands Harbor Marina Corp. v. Wells Fargo Ins. Serv. of Oregon, Inc.*,
    156 F. Supp. 3d 348 (S.D.N.Y. 2016) ......................................................... 5, 6

*Schmuck v. United States*,
    489 U.S. 705 (1989) ...................................................................................... 19

*Sea Trade Maritime Corp. v. Coutsodontis*,
    No. 09 Civ. 488, 2012 WL 3594288 (S.D.N.Y. Aug. 16, 2012) ................... 9, 10, 11, 12

*Sierra Rutile Ltd. v. Katz*,
    No. 90 Civ. 4913, 1992 WL 236208 (S.D.N.Y. Sept. 8, 1992) ................... 10

*Smith v. United States*,
    554 F. App'x 30 (2d Cir. 2013) ..................................................................... 25

*State Farm Mut. Auto. Ins. Co. v. Grafman*,
    655 F. Supp. 2d 212 (E.D.N.Y. 2009) ......................................................... 19

*Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*,
    250 F.3d 87 (2d Cir. 2001) ........................................................................... 24

*Tuscano v. Tuscano*,
    403 F. Supp. 2d 214 (E.D.N.Y. 2005) ......................................................... 18

*United States v. Zichettello*,
    208 F.3d 72 (2d Cir. 2000) ........................................................................... 23

**Statutes**

18 U.S.C. § 1965 ............................................................................................... 2, 15, 16

18 U.S.C.A. § 1961 .......................................................................................... 21

28 U.S.C. § 1962 ............................................................................................... 16, 17, 22, 23

**Rules**

C.P.L.R. § 302 .................................................................................................. passim

Plaintiffs The Related Companies, L.P. and MBM Supply Company LLC respectfully submit this Memorandum of Law in Opposition to the Motion to Dismiss of Christopher Du.

<u>**P**RELIMINARY **S**TATEMENT</u>

As discussed more fully in Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss filed by the "Ruthling Defendants (Carleton Ruthling ("Ruthling"), Tesla Walls LLC ("Tesla II"), Hudson Walls LLC ("Hudson"), Related Supply Ltd. ("Supply Co."), and Skye Holdings Ltd. ("Skye Holdings")) this case arises from Defendants' dishonesty, extortion, and greed in connection with joint ventures that Plaintiffs negotiated with Defendant Ruthling to provide goods and services in support of Plaintiffs' construction projects.  Plaintiffs' Amended Complaint ("Complaint" or "Compl.") details the crucial role that Du played in Defendants' fraudulent scheme which targeted New York entities and was predicated on Defendants' expectations that their enterprise would be retained on some of the largest construction projects in New York, which almost occurred before Plaintiffs began to realize what was going on and extricate themselves from Defendants.  Nevertheless, Du asks this Court to dismiss the claims against him as a matter of law or for lack of personal jurisdiction.

Contrary to Du's contentions, the Complaint makes a *prima facie* showing of personal jurisdiction.  Although Du asserts he is being brought into this action solely because of "routine" accounting work performed entirely in California, the Complaint tells a far different story.  Du's role was not limited to preparing financial statements based on information provided by the Ruthling-controlled entities.  Du joined the other Defendants to execute a scheme causing substantial harm to Plaintiffs' business in New York which Du had full reason to know and expect, given his central role in communicating with Plaintiffs to further Defendants' wrongdoing.  Du's New York-directed conduct establishes personal jurisdiction under C.P.L.R. § 302(a)(3)(ii).  In addition, Du acted in

1

concert with other Defendants to carry out a common plan to fleece Plaintiffs and conceal that fleecing, thus establishing personal jurisdiction based on conspiracy as well.  Finally, Du is subject to this Court's jurisdiction under 18 U.S.C. § 1965(b) because the ends of justice are best served by trying these claims in a single forum and the Southern District of New York is the most appropriate one.

Further, Du's arguments for dismissal of Plaintiffs' RICO and state law claims are legally unfounded, ignore the clear allegations of the Complaint, or both.  For example, Du contends that he cannot be liable as an outside accountant, but overlooks explicit Supreme Court holdings that "outsiders" have RICO liability when, like Du, they actively participated in the conduct of the affairs of the enterprise.  Du had a leading role in that regard, sending repeated requests for advances to Plaintiffs on false pretenses and actively covering up the fraudulent nature of those requests on behalf of other Defendants and their enterprises.  *See, e.g.,* Compl. ¶ 77.  Du did not merely perform an accounting function but was actively operating the RICO enterprise in collaboration with Ruthling. The Complaint also offers a clear and detailed description of the Defendants' fraudulent scheme and multiple specific examples of such activities, belying Du's assertion that Plaintiffs did not plead wire fraud or common law fraud with particularity.

In sum, for the reasons set forth below, the Court should deny Du's motion.

### FACTUAL BACKGROUND

In 2007 Defendant Ruthling and the Plaintiffs formed a joint venture to provide certain construction materials for Related's real estate projects.  (Compl. ¶ 1.)  Initially, Plaintiffs were fraudulently induced to advance funds to Supply Co., a company Ruthling controlled.  (*Id.*)  By 2012, Defendants pursued their scheme through Defendant Hudson as well as a company named Tesla Wall Systems, LLC ("Tesla I").  (*Id.* ¶ 2.)  Tesla I's professed goal was to become Related's

2

sole supplier of "curtain wall," including for some of New York's largest construction projects.  (*Id.*) Plaintiffs were fraudulently induced to advance Supply Co., Hudson, and Tesla I millions of dollars. But those funds were immediately drained from those entities purportedly to pay Defendants' false or enormously inflated invoices.  Defendants did this to steal Plaintiffs' money.  (*Id.*)

Du played multiple roles critical to this scheme, including (i) communicating with Related to request advances to Tesla I and Hudson—which he then helped to divert—and to claim that work on Plaintiffs' projects would be impaired if advances were not provided (*id.* ¶ 55); (ii) receiving assets fraudulently conveyed from Supply Co. (*id.* ¶¶ 40, 46); (iii) creating false accounting records for a variety of Ruthling-controlled entities to conceal Defendants' scheme (*id.* ¶¶ 9, 16, 75, 78); and (iv) helping hide $564,000 Ruthling paid himself for intellectual property that Related co-owned, labeling this expenditure an operating expense (*id.* ¶ 65).  The Complaint details multiple examples of Du engaging in wire fraud in furtherance of the Defendants' scheme, including specific requests for advances Du personally sent to Plaintiffs in New York.  (*Id.* ¶ 55.)

Largely supported by Du, Defendants managed to conceal their fraud for years despite Plaintiffs' unrelenting demands for supporting documentation.  As Du recognized by August 2013, acceding to Related's legitimate requests ultimately would be their undoing, "I think we may have opened [P]andora's box by send[ing] the bank statements."  (*Id.* ¶ 77.)

Du worked hard to hide the truth.  For example, in February 2014, Ruthling asked Du to provide "assistance" because Related might "shut down the business . . . ."  (*Id.* ¶ 75.)  Du was also tasked with scrubbing the books before they were presented to Related.  As Ruthling noted in discussing this effort with Du, "money we borrowed to date, need a *clean* story."  (*Id.*)  In addition, Du played a central role in Defendants' extortionate attempts to exact funds by threatening Plaintiffs' projects if "emergency" advances were not made.  (*Id.* ¶ 47.)  For example, in December

3

2013, Du helped get an immediate payment by claiming that Tesla I would otherwise go out of business "within 24 hours." (*Id.*)  These tactics continued for months, with Du often serving as the mouthpiece for the scheme.  (*Id.*); *see also* June, 2013 email from Du to Related stating "As you are aware, Tesla continues to experience dire cash flow shortfalls . . . .  Without additional funding, production in China will need to terminate as early as next week," *and* September, 2013 email from Du to Related stating "Again, please send funds as soon as possible as both Tesla and Skye Holdings are effectively out of cash and can no longer fund manufacturing and installation." (*Id.*)

Defendants stole millions of dollars of Plaintiffs' money, *id.* ¶ 80, substantially facilitated by the air of legitimacy Du created as a purported "outside accountant" and his role in communicating the financial story that Defendants fabricated to establish and conceal their fraud.

<u>**ARGUMENT**</u>

**I.** **PLAINTIFFS HAVE MADE A *PRIMA FACIE* SHOWING THAT DU IS SUBJECT TO NEW YORK LONG ARM JURISDICTION.**

**A.** ***Legal Standard.***

In the present case, personal jurisdiction under the New York long arm statute turns on a two-step analysis: (1) whether jurisdiction is available under the long-arm statute, Civil Practice Law and Rules ("C.P.L.R.") § 302(a); and (2) whether the exercise of such jurisdiction would violate the federal Due Process Clause. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163-164 (2d Cir. 2010).  Under C.P.L.R. § 302(a)(3), "a court may exercise personal jurisdiction over any non-domiciliary who, either in person or through an agent . . . commits a tortious act without the state causing injury to person or property within the state . . . if he expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." C.P.L.R. § 302(a)(3)(ii); *Doe v. Delaware State Police*, 939 F. Supp. 2d 313, 325-26 (S.D.N.Y. 2013).  To make out a *prima facie case*, Plaintiffs must allege facts showing that: (1) the

4

defendant committed a tortious act outside the State; (2) the claims arise from that act; (3) the act caused injury to a person or property in the State; (4) the defendant expected or should reasonably have expected the act to have consequences in the State; and (5) the defendant derived substantial revenue from interstate or international commerce. *Sands Harbor Marina Corp. v. Wells Fargo Ins. Serv. of Oregon, Inc.*, 156 F. Supp. 3d 348, 357 (S.D.N.Y. 2016).

Du does not challenge that Plaintiffs have established the first, second, or fourth elements of their *prima facie* case. However, for completeness, Plaintiffs will address each element below.

### B.    *Personal Jurisdiction Is Proper Under C.P.L.R. § 302(a)(3)(ii).*

#### 1.    *Du Committed Tortious Acts Outside the State.*

Du mischaracterizes his extensive role in executing Defendants' elaborate scheme as nothing more than "routine accounting" work. But Plaintiffs have alleged numerous instances in which Du committed tortious acts outside the state such as (i) sending fraudulent messages to request advances for Tesla I and Hudson (*id.* ¶¶ 47, 55); (ii) receiving assets fraudulently conveyed from Supply Co. (*id.* ¶¶ 40, 46); (iii) and creating false records for a variety of Ruthling-controlled entities (*id.* ¶¶ 9, 16, 75, 78). Thus, this first element for long arm jurisdiction, which Du does not contest, is easily established.

#### 2.    *The Claims Asserted Arise from Those Acts.*

The second element is also uncontested by Du. Plaintiffs' claims for common law fraud, RICO, negligent misrepresentation, and unjust enrichment against Du all arise from Defendants' joint enterprise in which Du was integrally involved to defraud Plaintiffs.

#### 3.    *Du's Conduct Caused Injury in New York.*

Du contends that Plaintiffs have not alleged that he caused any injury in New York, Mot. at 6, relying solely on cases where plaintiffs alleged purely economic injury while failing to even

acknowledge (let alone apply) the "situs of injury" analysis that applies in fraud cases such as this one.  In a case involving fraud, "the critical question is . . . where the *first effect of the tort was located* that ultimately produced the final economic injury."  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 792 (2d Cir. 1999) (emphasis added).  For example, in *Bank Brussels*, a Belgian bank sued a Puerto Rican law firm for omissions of key information in an opinion letter.  While Du's argument would indicate that the situs of injury in such a case was Puerto Rico, where the fraudulent opinion letter was issued, the Second Circuit held that the situs of the injury was in New York, where the bank disbursed funds in reliance on that opinion letter.  *Id.* at 793; *see also Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 899-900 (2d Cir. 1980) (New York was the situs of injury when misrepresentations in California about the quality of grape vines in California first caused economic injury in New York).  These principles were applied recently in a case involving a scheme to defraud a New York-based Plaintiff not unlike this one.  *Sands Harbor Marina Corp. v. Wells Fargo Ins. Serv. of Oregon Inc.*, 156 F. Supp. 3d 348, 357 (E.D.N.Y. 2016).  In *Sands Harbor*, the defendant made misrepresentations via letters, emails, and a phone call from Oregon to a plaintiff in New York to fraudulently induce plaintiff to wire money from New York to defendant and his co-conspirators in Oregon.  *Id.*  The court there found that the "situs of the injury inflicted upon Sands Harbor was in New York because Sands Harbor's financial loss occurred there."  *Id.*

Thus, the situs of the injury for which Du is being hailed into this Court is New York where Plaintiffs—two New York-based entities—issued financial advances to Defendants and the entities they controlled from New York based on fraudulent misrepresentations, extortion, and fraudulent concealment that Du made and helped to orchestrate even though Du's conduct occurred outside New York.  *See, e.g.*, Compl. ¶¶ 41, 46, 47, 56, 127. As in other fraud cases, the injury Plaintiffs

6

incurred from Defendants' fraudulent scheme was the payment from New York of advances to Defendants.  Therefore, the situs of injury in this case is unquestionably New York.

> ### 4.     *Du Should Have Reasonably Expected that His Conduct Would Have Consequences in New York.*

From these facts, there can be no doubt that Du should have reasonably expected that his conduct would have consequences in New York.[1]  Du's attempt to portray himself as California accountant with no meaningful interactions or transactions elsewhere and no active role in the Defendants' fraud is unconvincing.   The Complaint identifies concrete proof that Du often led the charge to deliberately and fraudulently extort money from Plaintiffs and thereafter conceal that fraud.  For example, Du fabricated cash shortfalls to support demands for more money and quashed information inconsistent with Defendants' lies.  *See* Compl. ¶ 13 (citing Jan. 2013 email where Du misrepresented costs); ¶ 16 (June 16, 2014 email where Du requested that Ruthling not share information with Plaintiffs); *id.* (Du reclassified Plaintiffs' advances to Tesla I as revenues).

Furthermore, Du could not have played his role as Ruthling's right hand in the Defendants' scheme without knowing that Ruthling sought to establish Tesla I as the sole provider of curtain wall for Related, including Related's New York construction projects such as the Hudson Yards projects on Manhattan's West Side. Moreover, Du actively and repeatedly reached out to Plaintiffs in New York to extract funds and feed them Defendants' lies.  As a result, Du had every reason to know that his acts would "have consequences in the state."

Du's contention that he could not reasonably have expected his conduct to have effects in New York defies common sense.  Contrary to the cases he cites, Du did not just perform innocent

---

[1] Plaintiffs do not argue that § 302(a)(3)(i) provides a basis for general jurisdiction; thus Du's arguments that refer to or rely on this provision are inapposite.

accounting work on an arm's length basis for clients from his office in California or send an isolated

e-mail to a resident of New York.  Du helped to coordinate and actively execute Defendants' scheme

knowing full well that Plaintiffs were located in, and issuing funds from, New York.  *Compare Vista*

*Food Exchange, Inc. v. Champion Foodservice, L.L.C.*, No. 14 Civ. 804, 2014 WL 3857053, at * 12

(S.D.N.Y. Aug. 5, 2014) (finding no jurisdiction where plaintiff offered no facts showing fraud or

fraudulent scheme with respect to out of state defendant), *with Felland v. Clifton*, 682 F.3d 665, 677

(7th Cir. 2012) (finding jurisdiction where plaintiff supplied facts showing that fraudulent

communications sent by out of state defendant were part of a scheme to defraud plaintiffs).

*5.*     *Du Derived Substantial Revenue from Interstate Commerce.*

Finally, by Du's own admission, he derived "substantial revenue from interstate or

international commerce."  He acknowledges that he "provided accounting services to Ruthling and

his companies in connection with the Projects" after noting that at least some of "the Projects" were

in Chicago, Illinois.  (Du Decl. ¶ 4.)  In addition, Du fully understood that Ruthling's business

structure depended on delivery of curtain wall below the cost of his competitors by sourcing

materials in China.  Indeed, Du admits that he performed services for Ruthling's companies that

were engaged in such international commerce, as well as services related to Ruthling's creation of

Hong Kong business entities.  In other words, Du's activities for Ruthling from which he derived

substantial revenue were predicated on international and interstate commerce and often directly for

international and interstate businesses.[2]  Thus, even ignoring the distinct likelihood that Du

generated additional revenue in his accounting practice from non-California business activities, there

is sufficient basis in the facts of this case to meet the final element for long-arm jurisdiction.

---

[2] The Du Declaration does not even address the issue of interstate or international commerce, and
instead only addresses whether Du solicited business in New York.

**C.      Personal Jurisdiction Based on Conspiracy is Proper Under C.P.L.R. § 302(a)(2).**

Alternatively, C.P.L.R. § 302(a)(2) supports personal jurisdiction here.  *See In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 338 (S.D.N.Y. 2000).  "It is well-established that acts committed in New York by the co-conspirator of an out-of-state defendant pursuant to a conspiracy may subject the out-of-state defendant to jurisdiction under C.P.L.R. § 302(a)(2)."  *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991).  This requirement is easily met by Ruthling's extensive dealings in New York.  For example, Ruthling met with Related executives in New York on "dozens of occasions to discuss ongoing and future curtain wall projects and to request advances to cover Tesla's operations costs."  (Decl. of Dr. Carleton Ruthling on Behalf of Tesla Wall Systems LLC in Supp. of Def. Tesla Wall Systems LLC, Tesla Walls LLC, Hudson Walls LLC's Memo. in Supp. of their Motion to Sever and Transfer ("Ruthling Decl.") ¶ 6, ECF No. 14.)  Ruthling also sent "numerous e-mails to Related executives in New York city regarding Tesla's business relationship with Related."  (Ruthling Decl. ¶ 7.)  Ruthling traveled to New York other times as well, such as to obtain notarized signatures on lien waivers for Related.  (Compl. ¶ 33.)  Each of these New York-directed acts advanced Defendants' scheme, thus constituting tortious acts committed in New York by Du's co-conspirator.  *See, e.g.*, *In re Sumitomo Copper Litig.*, 120 F. Supp. 2d at 340 (co-conspirators entering into agreements and conducting business in New York to further defendants' scheme were tortious acts and established conspiracy jurisdiction).

To support personal jurisdiction based on conspiracy, a plaintiff must allege (1) a *prima facie* showing of a conspiracy, and (2) specific facts to warrant the inference that the defendant was a member of the conspiracy.  *Sea Trade Maritime Corp. v. Coutsodontis*, No. 09 Civ. 488, 2012 WL 3594288, at *7 (S.D.N.Y. Aug. 16, 2012).  When assessing this issue, "the Second Circuit has held that in a case where the plaintiff has submitted evidentiary facts tending to connect the defendant to

9

New York transactions, the conspiracy/jurisdictional issue should not be resolved and the complaint dismissed without discovery." *Cleft of the Rock Found. v. Wilson*, 992 F. Supp. 574, 583 (E.D.N.Y. 1998) (citing *Sierra Rutile Ltd. v. Katz*, No. 90 Civ. 4913, 1992 WL 236208, at *8 (S.D.N.Y. Sept. 8, 1992) (citing *Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326, 1343–44 (2d Cir. 1972))).[3]

> ### 1.    *Plaintiffs Have Made a Prima Facie Showing of a Conspiracy.*

To make a *prima facie* showing of a conspiracy, Plaintiffs need only identify: (1) a corrupt agreement between two or more persons, (2) an overt act in furtherance of the conspiracy, (3) the parties' intentional participation in the furtherance of a plan or purpose, and (4) resulting damage or injury. *Sea Trade Maritime Corp.*, 2012 WL 3594288, at *7. A plaintiff need not allege an express agreement, rather, even "disconnected acts, when taken together, may satisfactorily establish a conspiracy." *First Fed. Savings and Loan Assn. of Pittsburgh v. Oppenheim, Appel, Dixon & Co.*, 629 F. Supp. 427, 443-44 (S.D.N.Y. 1986). For example, in *First Federal Savings*, the court found that the plaintiffs' allegations as to "Comark's fraud and conversion, the intimate business relationship between Comark and OAD, OAD's knowledge of Comark's unlawful acts, and the nature of OAD's misrepresentations constitute sufficient facts from which a trier of fact could infer an agreement." *Id.* at 444.

Here, the Complaint sets forth detailed facts regarding Defendants' coordination to carry out a common plan to defraud Plaintiffs. For example, (1) Ruthling and Du made fraudulent funding demands to Plaintiffs; (2) Du and various Ruthling-related entities created and used false invoices to

---

[3] If the Court concludes that it cannot make a determination regarding personal jurisdiction on the current record, then limited jurisdictional discovery, including regarding Du's income derived from New York, should be permitted.

retroactively justify those demands; (3) various Defendants received funds from Tesla I and other

Ruthling-related entities to create the appearance that those entities were bereft and needed

additional advances from Plaintiffs; (4) Ruthling and Skye Supply deliberately caused materials to

be withheld from Plaintiffs' projects to pressure Plaintiffs to make the advances sought by Ruthling

and Du.  These facts are more than sufficient to plead a conspiratorial agreement—courts have found

such an agreement on far less.  *See, e.g., Sea Trade Maritime Corp.*, 2012 WL 3594288, at \*7

(plaintiff sufficiently pled a corrupt agreement by setting forth a handful of disconnected acts, which

suggested that defendants were working together to disparage plaintiff's management); *see also*

*F.D.I.C. v. Hodge*, 50 F. Supp. 3d 327, 340 (E.D.N.Y. 2014) (inferring a corrupt agreement where

one party created a false title commitment when it had no incentive to do so, unless it was working

with unspecified co-conspirators to get "some benefit beyond its usual fee").

Plaintiffs also satisfy the second conspiracy element, having alleged numerous examples of

overt acts in furtherance of the conspiracy.  *See* Compl. ¶ 8 (Defendants sent invoices to Supply Co.,

Hudson, and Tesla I for expenses that were not actually incurred servicing the Projects); ¶ 9 (the

Ruthling-related entities transferred advances that were fraudulently obtained from Plaintiffs away

from the recipient entities and to other Ruthling entities to show a need for further advances and Du

created false records to conceal the facts); ¶¶ 15, 51 (Skye Supply withheld critical shipments of

materials to Related understanding that threatened delay of the project would cause significant

financial exposure to Plaintiffs); ¶ 17 (false invoices were deliberately created by Du and submitted

to Ruthling-related entities for payment from Plaintiffs' funds).

The third element is satisfied in that Defendants and Due intentionally participated in the

scheme to defraud Plaintiffs.  *See Chrysler Capital Corp.,* 778 F. Supp. at 1268 (allegations that

defendant knowingly participated in the agreement and assisted in its implementation satisfied the

11

third requirement); *see also Cleft of the Rock Found.*, 992 F. Supp. at 582  (a defendant's "intentional participation" can "be inferred from the overt acts taken" by a defendant); *Sea Trade Maritime Corp.,* 2012 WL 3594288, at \*8 (the third element was satisfied where plaintiff alleged overt acts by defendants in furtherance of the conspiracy).  As discussed above, Plaintiffs identify many examples of Du's intentional actions to further Defendants' scheme.  Plaintiffs' concurrently-filed Memoranda in Opposition to the Motions to Dismiss of Du's co-Defendants identify further examples of knowing participation by all Defendants.

Finally, the fourth element of a conspiracy is satisfied where, as here, Plaintiffs allege facts showing that millions of dollars were improperly extracted through Defendants' elaborate scheme. (Compl. ¶ 20); *see also Sea Trade Maritime Corp.,* 2012 WL 3594288, at \*8 (fourth element satisfied where plaintiffs alleged millions of dollars in financial losses caused by the conspiracy); *In re Sumitomo*, 120 F. Supp. 2d at 339 (fourth element satisfied where plaintiffs articulated injury in their business by trading copper futures at artificial prices to their detriment).  Accordingly, Plaintiffs have satisfied all of the requisite elements for a *prima facie* showing of a conspiracy.

2.      *There Are Numerous Examples of Du's Involvement in the Conspiracy.*

For conspiracy-based jurisdiction, Plaintiffs must also allege sufficient facts to support the inference that Du was a member of the conspiracy and contact between the conspiracy and New York.  *Chrysler Capital Corp.*, 778 F. Supp. at 1266.  This inference is warranted by facts showing that the defendant knew a fraudulent scheme would "impose injury on plaintiffs" in New York, knew that wrongful activity in New York by other defendants "was intended to advance the objectives of the defendants," and that the defendants with activity in New York engaged in conduct "on behalf and to the benefits of all of the defendants."   *Cleft of the Rock Found.*, 992 F. Supp. at 584 (holding that these allegations were sufficient to allege conspiracy jurisdiction even against a

defendant who had joined the conspiracy subsequent to conduct by other defendants in New York because joining the conspiracy was ratification of the other defendants' conduct).  As previously discussed, there can be no doubt that Du was aware of the effects of his activity in New York.  *See* Section I.B(4), *supra*.  Moreover, as discussed above, Ruthling engaged in extensive activity in New York to advance the conspiracy, and Du and Ruthling coordinated their activities to advance the conspiracy, including Ruthling's activities in New York.  *See* Section p. 9, *supra* (discussing actions by Ruthling in New York).

Accordingly, Plaintiffs satisfy the elements for conspiracy jurisdiction.

### D.       The Exercise of Personal Jurisdiction Over Du Comports with Due Process.

For long-arm jurisdiction, the Court must also consider whether the exercise of jurisdiction over Du comports with Due Process.  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002).  Where, as here, "the claim arises out of, or relates to, the defendant's contacts with the forum," Due Process is satisfied by a showing that the defendant 'purposefully directed' his activities at forum residents and the suit arises out of those activities.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).  Personal jurisdiction cannot be avoided just because a defendant did not physically enter the forum state.  *Id*.

In his declaration, Du emphasizes that he does not reside, own property, or otherwise spend time in New York.  *See generally* Du Decl.  However, these contentions have no bearing on Plaintiffs' assertion that Du is subject to both this court's specific jurisdiction and conspiracy jurisdiction.

Plaintiffs' claims arise, *inter alia*, from Du's own intentional acts of sending hundreds of emails and making numerous telephonic calls to convey fraudulent and fabricated information to Plaintiffs in New York to advance Defendants' scheme to get Plaintiffs to send funds from New

13

York.  As a result, Du could readily foresee being hailed into court here.  As noted above, the facts

belie any suggestion by Du that he had no idea that Plaintiffs were residents of New York and were

sending payments from here.  Du expressly aimed his tortious conduct at New York, and Plaintiffs'

injuries were directly caused by Du's repeated misrepresentations to them.  *See Felland v. Clifton*,

682 F.3d 665, 675 (7th Cir. 2012) (finding that Arizona defendant's continuous fraudulent course of

conduct, which consisted of sending repeated communications that contained misrepresentations

intended to defraud plaintiffs in Wisconsin were intentional tortious acts that were expressly aimed

at residents of Wisconsin and there was "no doubt" that defendant knew the alleged harm would be

felt in Wisconsin).  The facts of *Felland* are virtually indistinguishable from this case.

In addition, the actions of Du's co-conspirators in New York are attributable to Du, thus Du

"purposefully availed" himself of New York's laws through them.  *See Maersk, Inc. v. Neewra, Inc.*,

554 F. Supp. 2d 424, 445 (S.D.N.Y. 2008) (the actions of a defendant's co-conspirators in the forum

state were attributable to the defendant and formed sufficient contacts giving rise to jurisdiction); *In

re Sumitomo Copper Litig.*, 120 F. Supp. 2d at 342 (defendants' participation in a conspiracy to

impact prices on the New York copper market were "intentional, and allegedly tortious, actions" that

were "expressly aimed at" New York and thus consistent with Due Process); *Global Intellicom, Inc.

v. Thomson Kernaghan & Co.*, No. 99 Civ. 342, 1999 WL 544708, at *19 (S.D.N.Y. July 27, 1999)

(Canadian defendant who participated in conspiracy to depress stock value of a business in New

York had sufficient contacts with New York for the purpose of Due Process).

The second part of the Due Process analysis asks "whether the assertion of personal

jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it

is reasonable under the circumstances of the particular case."  *Metro. Life Ins. Co. v. Robertson-Ceco

Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945).

This inquiry considers: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Metro. Life*, 84 F.3d at 568 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113-14 (1987)). Where a plaintiff makes the threshold showing of minimum contacts, as Plaintiffs have done here, a defendant must present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 568.

Here, Du does not even address whether the exercise of personal jurisdiction over him comports with Due Process and, thus, he wholly fails to carry his burden. Moreover, the reasonableness factors tip strongly in favor of jurisdiction. As discussed below, New York is likely the only place where Plaintiffs can receive complete and effective relief. Moreover, trying this case in a single forum will serve the interstate judicial system's interest in obtaining the most efficient resolution of this case, and the shared interest of the states is served by holding those who conspire to commit fraud on an interstate basis accountable where the harm is directly felt. *See Felland*, 682 F.3d at 679 (finding, on similar facts, that the reasonableness factors militated in favor of jurisdiction where the fraud victims resided).

## II.   PERSONAL JURISDICTION OVER DU IS ALSO WARRANTED UNDER 18 U.S.C. § 1965 (B).

Notably, Du completely fails to address personal jurisdiction under 18 U.S.C. § 1965 (b).[4] That portion of the RICO statute "provides for nationwide service and jurisdiction over 'other parties' not residing in the district, who may be additional defendants of any kind," if the district

---

[4] Du's arguments relating to the sufficiency of Plaintiffs' RICO claims are unfounded, as  discussed *supra*, and, therefore, do not alter the jurisdictional analysis under § 1965(b).

court finds that "the 'ends of justice' so require."  *PT United Can Co. Ltd. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998).  There is general agreement that such jurisdiction is warranted when the RICO claim could not otherwise be tried in a single action.  *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 351 (S.D.N.Y. 2014); *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 315 (S.D.N.Y. 2010) (collecting cases).

Most of the Defendants are, by their own admission and lack of objection to the exercise of personal jurisdiction over them, subject to personal jurisdiction in New York.  This is not surprising since the Ruthling Defendants all fall within 18 U.S.C. § 1965(a), which authorizes a RICO action in a "district in which such person resides, is found, has an agent, or transacts his affairs."  Indeed, all Defendants that have been served stipulated to transfer to this Court.

RICO jurisdiction is also warranted because there may be no other forum where all Defendants are subject to jurisdiction.   For example, there is no reason that the Ruthling Defendants that have not disputed this Court's jurisdiction would all make the same concession to jurisdiction in California, which Du apparently believes is the only forum where he can be sued.

Considering the undisputed fact that Defendants' deliberately targeted Plaintiffs in New York to fleece them of their New York-based assets, it is difficult to imagine any other forum where the interests of justice would be better served to resolve these claims in a single efficient proceeding.

Accordingly, 18 U.S.C. § 1965 (b) provides an additional basis for exercising personal jurisdiction over Du.  *See Elsevier Inc. v. W.H.P. R., Inc.*, 692 F. Supp. 2d 297, 315 (S.D.N.Y. 2010) (finding RICO jurisdiction satisfied where at least one defendant had sufficient minimum contacts with forum state, no other forum would have jurisdiction over all defendants, and defendant failed to offer any legitimate constitutional reason why  such jurisdiction was not appropriate).

III.    **PLAINTIFFS HAVE PROPERLY STATED RICO CLAIMS AGAINST DU.**

      *A.*    *Du Participated in the Operation and/or Management of Several RICO Enterprises.*

A claim under 28 U.S.C. § 1962(c) requires that each defendant participated in "the operation or management of an enterprise through a pattern of racketeering activity." *Reves v. Ernst & Young*, 507 U.S. 170 (1993). Du ignores the Complaint's detailed allegations of his participation in the operation and/or management of each of the alleged enterprises. *See* Compl. ¶ 81. Du's argument that Plaintiffs do not allege enough involvement by Du in Defendants' enterprises instead depends on mischaracterization of the applicable law. Du argues, in essence, that he was just following orders and, for that reason, could never have RICO liability. (Mot. at 15) ("The Complaint's singular theme is that Ruthling was the sole person with direction and control."). If that were the law, then RICO liability would be limited to control persons or crime bosses, which it is not.

As the Supreme Court explained in *Reves*: "We agree that liability under § 1962(c) is not limited to upper management, but we disagree that the 'operation or management' test is inconsistent with this proposition. An enterprise is 'operated' not just by upper management but also by the lower rung participants in the enterprise who are under the direction of upper management." *Id.* at 184. Therefore, even if Du's entire participation in the Defendants' scheme was directed by Ruthling, Du would not be absolved. As described in further detail below, *see* 0.B, *infra*, however, Du actively participated in the fraud, including through the initiation of direct communications with Related in furtherance of the fraud. On that basis, his "operation" or "management" of the endeavor is specifically alleged and must be accepted for purposes of the current motion.

Nor can Du escape RICO liability simply because, as a matter of superficial form, he was an outside accountant rather than an officer or employee of one of the corporate Defendants or the joint ventures discussed in the Complaint. Again, as the Supreme Court explained in *Reves*: "Of course,

'outsiders' may be liable under § 1962(c) if they are 'associated with' an enterprise and participate in the conduct of *its* affairs—that is, participate in the operation or management of the enterprise itself . . . ." *Id.* at 185.  Du's role, in contrast to, for example, Ernst & Young's role in *Reves*, was not limited to preparing financial statements based on information provided by the Ruthling-controlled entities at arm's length.  *Cf. id.* at 186.  Du (i) communicated directly with Related to make the demands for advances to Tesla I and Hudson a centerpiece of the fraud (Compl. ¶ 55); (ii) he received assets fraudulently conveyed from Supply Co. (*id.* ¶¶ 40, 46); and (iii) he created false records to conceal Defendants' scheme (*Id.* ¶¶ 9, 16, 75, 78).  Requests for advances are not simply an accounting function tracking and documenting business spending but, instead, are supposed to be necessary for the operation of the business itself.  Indeed, the requests made by Du (and Ruthling) were represented by them to be essential for Tesla I to continue in operation.

Thus, Du's activities went far beyond "accounting services to Ruthling and his companies in connection with projects."  (Ruthling Aff. ¶ 4, DE 61.)  In other words, Du engaged in exactly the type of conduct that would befit an officer or employee of the joint ventures through which much of the fraud was perpetrated.  That he also played an active role in creating fictional records and accounting treatment for those entities to conceal the fraud is further evidence of his role in the operation and management of the RICO enterprise, not as an accounting functionary.  *See, e.g.*, *Tuscano v. Tuscano*, 403 F. Supp. 2d 214, 227 (E.D.N.Y. 2005) (sustaining RICO claims against an accountant based on allegations that he "participated in the scheme by faxing allegedly fraudulent documents on behalf of the Companies and preparing and filing allegedly false records and tax returns" and against an in-house bookkeeper based on allegations of "faxing alleged allegedly fraudulent documents relating to the Companies' inventory and finances," as well as that both coerced others "not to inquire too closely into the affairs of the Companies").  The combination of

18

Du's alleged activities preclude a finding that he is immune from liability under RICO as a matter of law.

### B.      The Complaint Alleges Du's Predicate Acts of Fraud with Particularity.

"To establish RICO claims based on mail and wire fraud, a complaint must, as a threshold matter, allege 'the existence of a fraudulent scheme.'"  *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 299 (S.D.N.Y. 2013) (quoting *McLaughlin v. Anderson*, 962 F.2d 187, 190-91 (2d Cir. 1992)). It must also identify "the connection of the mail and/or wire communications to the scheme.'"  *Id.* (quoting *In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 456 (S.D.N.Y. 1998)).

With regard to the specific acts of mail or wire fraud, "[t]he complaint must . . .allege that 'the defendant 'caused' the mailing or use of the wires' and that 'the mailing or use of the wires 'was for the purpose of executing the scheme or, in other words, incident to an essential part of the scheme.'"  *Id.* (quoting *Maersk, Inc. v. Neewra, Inc.*, 687 F. Supp. 2d 300, 332 (S.D.N.Y. 2009)). But "where the mails or wires are used in furtherance of fraud, the communications need not contain false or misleading information themselves."  *Id.* at 307 (citing *Schmuck v. United States*, 489 U.S. 705, 715 (1989)).  "It is sufficient for the mailing [or transmission] to be incident to an essential part of the scheme or a step in the plot."  *Id.* (quoting *Schmuck*, 489 U.S. at 710-11).  Further, to adequately allege a RICO case predicated on mail or wire fraud, it is not necessary for a plaintiff to identify each and every act of mail or wire fraud in furtherance of the fraudulent scheme; examples are sufficient.  *State Farm Mut. Auto. Ins. Co. v. Grafman*, 655 F. Supp. 2d 212, 228 (E.D.N.Y. 2009) (complaint complied with Rule 9(b) where it offered "examples of fraudulent statements").

The Complaint here more than meets these standards.  Plaintiffs detail the existence of a fraudulent scheme, including its contours and purposes.  *See, e.g.*, Compl. ¶¶ 1, 2, 7-11, 16, 40-61, 79-80.  The scheme was designed to obtain funds from Plaintiffs well beyond those needed for

19

Plaintiffs' projects and siphon those funds from their recipients as quickly as possible in order to perpetuate Plaintiffs' scheme.

Plaintiffs also identify how mail and/or wire fraud was essential to the scheme, including communications demanding advances, delaying delivery of documentation for the advances, threatening Related's projects if advances were not provided, and communicating false and fraudulent purported support for the advances.  Plaintiffs also offer specific examples of Du's direct involvement in communications by wire in furtherance of the Defendants' scheme such as:

| Paragraph | Examples of Predicate Acts |
|---|---|
| 47 | "A June 4, 2013 email from Du to Related stating 'As you are aware, Tesla continues to experience dire cash shortfalls . . . .  Without additional funding, production in China will need to terminate as early as next week." |
| 47 | "A September 23, 2013 email from Du to Related stating 'Again, please send funds as soon as possible as both Tesla and Skye Holdings are effectively out of cash and can no longer fund manufacturing and installation." |
| 55 | "In an August 16, 2012 email from Du to Related, Du states 'If we move the August NLSD A/R payment to Sept we will be short at least $400k (excluding the façade payment).  There are a few large bills that need to be paid, specifically the bill for installation provided by Blue Sky.'" |
| 55 | "In a January 24, 2013 email from Du to Related copying Ruthling, Du states 'we are requesting the balance of the $1.2MM previously requested.'" |
| 55 | "In a May 24, 2013 email from Du to Related, Du states 'This is to follow-up regarding Tesla's immediate cash needs.'" |
| 55 | "In a June 21, 2013 email from Du to Related copying Ruthling, Du states 'As previously provided, please find below the funding needs (111 Wacker alone needs $1.1MM for June)." |
| 55 | "In a September 23, 2013 email from Du to Related, Du states 'On August 20th, Tesla sent an email requesting a loan of $2.2 million.'" |
| 55 | "In a November 26, 2013 email from Du to Related copying Ruthling, Du states 'The following need to be paid immediately . . . .'" |
| 55 | "In a January 27, 2014 email from Du to Related copying Roland Nikles and Ruthling, Due states 'The following payments need immediate funding . . . China — there are a number of vendors that need to be paid immediately." |
| 76 | "On August 23, 2013, . . . Ruthling and Du emailed Related attaching certain bank statements for Skye Holdings that they had attempted to 'clean' up, as Ruthling had previously instructed Du." |

Du's contention that Plaintiffs did not allege his knowing misrepresentations is willfully

blind to the Complaint's specific allegations regarding communications between Du and Ruthling, which, at a minimum in the present procedural context, must be interpreted in the light most favorable to Plaintiffs—i.e., to reflect Du's awareness of the impropriety of his and Ruthling's conduct.  *See* Compl. ¶ 78 (in a September 12, 2013 email from Du to Ruthling, Du exclaimed, "Do you still want to go down that path with them????  More info means more questions."); *id.* ¶ 75 (in a February 2014 email to Du, Ruthling demanded "assistance" because Related might "shut down the business" and asked Du to scrub the books, stating "money we borrowed to date, need a *clean* story, once you send me the numbers lets discuss." (emphasis added)).

### C.      *Plaintiffs Properly Alleged RICO Enterprises.*

Du's argument that Plaintiffs did not adequately allege a RICO enterprise largely restates the general principles governing RICO claims yet fails to identify any flaw in the Complaint under those principles.  Mot. at 19 (quoting *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) and *Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85 (2d Cir. 1999).  Du only argues that the allegations against him relate solely to "accounting services" and do not show that he shared in the purpose of any enterprise.  However, as set forth in sections A. and B. above, the allegations of misconduct by Du go well beyond "accounting services," placing him centrally in the operation of the Defendants' enterprises.  In other words, there are specific and extensive allegations of how Du worked to advance the goals of the enterprises and from which Du's agreement to further the conspiracy, whether express or implied, is readily apparent.  In sum, Du's argument relies upon an entirely contrived reading of the Complaint which should be rejected.

Du focuses on principles governing "associated-in-fact" enterprises described in the latter portion of subsection (4) of §1961 but ignores the first part of the definition of an "enterprise," which includes "any individual, partnership, corporation, association, or other legal entity."  18

U.S.C.A. § 1961(4).  Whether or not the Complaint adequately alleges an enterprise "associated in fact"—which, as shown below, it does—Du still bears RICO liability based on his participation in the activities of all other alleged enterprises.  *Id.*

Plaintiffs specifically allege that Du participated in the operation or management of several entities which, themselves, qualify as RICO enterprises, including Skye Holdings, Supply Co., Hudson, Tesla I, and Tesla II.  (Compl. ¶ 81.)  And, as explained above, Du's participation in those entities was substantial, going well beyond the role of an arm's length outside accountant.  *See* Section III.A., *supra*.  Consequently, Plaintiffs' allegations regarding Du's participation in such RICO enterprises satisfy the enterprise element of Plaintiffs' RICO claims against Du.

Plaintiffs' allegations of two "associated-in-fact" enterprises, namely the joint venture among Hudson, Tesla I, and Related, and the association of all Defendants likewise establish a valid RICO enterprise.  To properly allege such an enterprise, it is necessary to describe "a continuing unit that functions with a common purpose."  *Boyle v. United States*, 556 U.S. 938, 948 (2009).  The common purpose of the joint venture among Hudson, Tesla I, and Related was to supply construction materials for Related's real estate projects (a purpose on which Related relied in making advances to Tesla I and other Ruthling-controlled entities).  (Compl. ¶ 2.)  The common purpose of the association of all Defendants was to defraud Plaintiffs.  (*Id.* ¶¶ 16-19.)  *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 164 (2001) ("The Court has held that RICO both protects a legitimate 'enterprise' from those who would use unlawful acts to victimize it, and also protects the public from those who would unlawfully use an "'enterprise'(whether legitimate or illegitimate) as a vehicle through which unlawful activity is committed.") (citations and quotation omitted).

As noted above, Du's role and responsibilities as well as his specific activities for the individual entity "enterprises" and the associated-in-fact enterprises went well beyond those of an

outside accountant.  Therefore, Du's argument that Plaintiffs have failed to allege that Du agreed to further a conspiracy, worked with other members of the associated-in-fact enterprises, and shared in the common purpose of those enterprises cannot withstand scrutiny.

### D.      Plaintiffs Properly Alleged That Du Was Part of a RICO Conspiracy.

Du's argument that the Plaintiffs' RICO conspiracy claims under 18 U.S.C. § 1962(d) must be dismissed because Plaintiffs have failed to allege underlying violations of 18 U.S.C. § 1962(c) is unavailing because, as explained above, Plaintiffs have adequately alleged such violations.

Du's alternative argument that Plaintiffs fail to adequately allege an agreement because "[t]he Complaint is devoid of factual allegations concerning (1) when and where a purported agreement was reached; (2) what the purported agreement entailed; and (3) the nature and extent of the unlawful common purpose" misapprehends what constitutes an agreement under § 1962(d). Mot. at 21.  Section 1962(d) does not require a plaintiff to plead the date, time and location of a specific express agreement.  As the Second Circuit has made clear, "[a] RICO conspiracy charge is proven if the defendant embraced the objective of the alleged conspiracy, and agreed to commit predicate acts in furtherance thereof."  *United States v. Zichettello*, 208 F.3d 72, 99 (2d Cir. 2000) (quotation omitted).  "Assuming that a RICO enterprise exists, the government must prove only that the defendants know the general nature of the conspiracy and that the conspiracy extends beyond their individual roles."  *Id.* (quotation omitted).  "In applying this analysis, [the court] need inquire only whether an alleged conspirator knew what the other conspirators were up to **or** whether the situation would logically lead an alleged conspirator to suspect he was part of a larger enterprise." *Id.* (quotation omitted) (emphasis added).  As explained above, the allegations as a whole, including those regarding Du's interactions with Ruthling and various co-Defendants, Du would have needed to have his head in the sand not to "suspect he was part of a larger enterprise."  As a result, the RICO

23

conspiracy claim is sufficient to withstand the current motion.

**IV.    PLAINTIFFS PROPERLY STATED COMMON LAW CLAIMS AGAINST DU.**

       ***A.        Plaintiffs Properly Pled Common Law Fraud.***

As set forth in Section III.B, Plaintiffs adequately pled fraud with particularity under Rule 9(b) for purposes of RICO.  Du's arguments for dismissal of the state law fraud claim mirror those rebutted as to the RICO claims and, thus, are equally unavailing.

       ***B.        Plaintiffs Have Properly Pled Negligent Misrepresentation.***

The Second Circuit has held that a complaint adequately alleges the special relationship necessary for a negligent misrepresentation claim when "defendants initiated contact with plaintiffs, induced them to forebear from performing their own due diligence, and repeatedly vouched for the veracity of the allegedly deceptive information."  *Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001).  Here, the Complaint alleges just such a course of activity in which Du was a central player.  For example, Du repeatedly initiated contact with Plaintiffs to request advances and to deflect Plaintiffs' requests for information to support those demands.  *See, e.g.*, Compl. ¶ 55.  Moreover, he provided cover for Defendants' deception by packaging up the fraudulent invoices and claims in the guise of "accounting" documentation.

Du also was well aware that Related was co-owner of Tesla I, for which Du was providing accounting services.  Nikas Decl. in Support of Pl. Opp. to Du's Mot. Ex. 1.  Thus, when making assertions as to the appropriate amount of advances and the potential consequences if the advances were not provided, Du knew that Plaintiffs relied on him for accurate information.  Counting on that fact, he discouraged them from probing further and withheld information that would allow more informed enquiries.  (Compl. ¶¶ 77-78, 111.)  As Du recognized in his e-mail to Ruthling, "More info means more questions."  (*Id.* ¶ 78.)  As in *Suez Equity*, "[g]iven that a determination of whether

a special relationship exists is essentially a factual inquiry, these allegations are sufficient to overcome a motion to dismiss."  250 F.3d at 104.

>       ### C.        Plaintiffs Properly Pled Unjust Enrichment.

Continuing his theme of reframing his active participation in a scheme to defraud Plaintiffs into simple "accounting activity," Du also misrepresents Plaintiffs' unjust enrichment claim.  Du claims this cause of action rests solely on "the fact that Ruthling compensated Du for the accounting services that Du provided to Ruthling in connection with the projects."  Mot. at 23.  But Plaintiffs allege that Du himself received funds from Plaintiffs on the pretense that they would pay for services and materials for Related's real estate projects, but were then fraudulently conveyed from Supply Co. to Du.  (Compl. ¶¶ 40, 46.)  In other words, the unjust enrichment claim is not simply predicted on Du's compensation for accounting services but for ill-gotten gains received by Du throughout his participation in the Defendants' fraudulent scheme.  It would be "against equity and good conscience" to permit Du to retain funds that he effectively stole from Plaintiffs in this manner.[5]

*Georgia Malone & Co., Inc. v. Ralph Rieder*, 86 A.D.3d 406, 408 (1st Dep't 2011).

>       ### CONCLUSION

For the foregoing reasons, Du's Motion to Dismiss should be denied in its entirety.[6]

---

[5] Furthermore, even if Du's only financial gain was hourly or other fees in payment for "accounting services," Du's conduct did not constitute proper "accounting services" or support such compensation, which drained funds from Tesla I.  At a minimum, the fact-finder should decide whether "equity and good conscience" allows Du to retain that compensation.

[6] Contrary to Du's request, should dismissal be granted on personal jurisdiction grounds, it should be without prejudice, because Plaintiffs may file suit in a new jurisdiction.  *Smith v. United States*, 554 F. App'x 30, 32 (2d Cir. 2013).  The same would be true with regard to dismissal based on any pleading deficiency.  Further, even if the Court were to dismiss Plaintiffs' RICO claims with prejudice it should exercise supplemental jurisdiction over Plaintiffs' state law claims for the reasons set forth in Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss of the Ruthling Defendants, incorporated by reference.

Dated: New York, New York
        July 17, 2017

                                        BOIES SCHILLER FLEXNER LLP

                                        /s/ *Nicholas A. Gravante, Jr.*
                                        Nicholas A. Gravante, Jr.
                                        Luke Nikas
                                        575 Lexington Avenue
                                        New York, New York 10022
                                        (212) 446-2300

                                        Karen C. Dyer
                                        121 South Orange Avenue
                                        Orlando, Florida 32801
                                        (407) 425-7118

                                        *Attorneys for Plaintiffs*

26